**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| In re: | ) Case No.: 18-41671-705 |
| | ) Honorable Charles E. Rendlen III |
| MGTF RADIO COMPANY, LLC, et al., | ) Chapter 11 |
| | ) Jointly Administered |
| Debtors. | ) |
| | ) Hearing Date: February 12, 2019 |
| | ) Hearing Time:  10:00 a.m. |
| | ) Hearing Location: 7 South |
| | ) St. Louis, Missouri |
| | ) |
| | ) Robert E. Eggmann, Esq. |
| | ) Thomas H. Riske, Esq. |
| | ) Carmody MacDonald P.C. |
| | ) 120 South Central, Suite 1800 |
| | ) St. Louis, Missouri 63105 |
| | ) (314) 854-8600 |
| | ) ree@carmodymacdonald.com |
| | ) thr@carmodymacdonald.com |
| | ) |

**ORDER CONFIRMING FIRST AMENDED JOINT CHAPTER 11 PLAN OF
REORGANIZATION OF MGTF RADIO COMPANY, LLC AND WPNT, INC. DATED
NOVEMBER 13, 2018 AND GRANTING RELATED RELIEF**

Upon the *Order Approving Adequacy of Disclosure Statement Pursuant for Debtors' Joint Plan of Reorganization and Granting Related Relief* [Dkt. No. 171] dated December 28, 2018 (the "Disclosure Statement Approval Order"), the Court held a hearing (the "Confirmation Hearing") on February 12, 2019 to consider confirmation of the *Joint Chapter 11 Plan of Reorganization of MGTF Radio Company, LLC and WPNT, Inc. Dated November 13, 2018* [Dkt No. 142]. Prior to the Confirmation Hearing, Debtors and Debtors-in-Possession MGTF Radio Company, LLC and WPNT, Inc. (the "Debtors" or "Proponents") filed the *First Amended Joint Chapter 11 Plan of Reorganization of MGTF Radio Company, LLC and WPNT, Inc. Dated November 13, 2018* [Dkt. No. 205] to include certain amendments.[1]

At the Confirmation Hearing, the Court considered *Debtors' Brief in Support of Debtors' Joint Chapter 11 Plan of Reorganization* [Dkt. No. 196], the *Declaration of Michael J. Frischling in Support of Debtors' Joint Plan of Reorganization* [Dkt. No. 197], and the Debtors' *Report of Balloting* (the "Ballot Report") [Dkt. No. 195], all of which were admitted into evidence and all of the evidence proffered or admitted at the Confirmation Hearing, and heard argument on confirmation of the Plan and on objections

---

[1] Capitalized terms used but not otherwise defined in these findings of fact, conclusions of law, and order (collectively, this "Confirmation Order") have the meanings given to them in the *First Amended Chapter 11 Plan of Reorganization of MGTF Radio Company, LLC and WPNT, Inc. Dated November 13, 2018*, attached hereto as **Exhibit A** (as may be amended, supplemented, or otherwise modified from time to time, and including all supplements thereto, the "Plan").

{15323/00016/2460779.DOCX.}

filed in opposition thereto. After due deliberation thereon and good and sufficient cause appearing therefore, the Court hereby makes the following findings of fact and conclusions of law (the "Findings and Conclusions").

**THE COURT HEREBY FINDS AND CONCLUDES** that:

A.      Exclusive Jurisdiction; Venue; Core Proceeding (28 U.S.C. §§ 157(b)(2) and 1334(a)).

The Court has jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. Confirmation of the Plan is a core proceeding under 28 U.S.C. § 157(b)(2), and the Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and should be confirmed.

B.      Disclosure Statement Approval Order. On December 28, 2018, the Court entered the Disclosure Statement Approval Order that, among other things, (i) approved the *Disclosure Statement for Debtors' Joint Plan of Reorganization Dated November 13, 2018* [Dkt No. 143] (the "Disclosure Statement") as containing adequate information within the meaning of section 1125(a) of the Bankruptcy Code, (ii) established solicitation procedures, (iii) fixed February 12, 2019 at 10:00 a.m. (Central time) as the date and time for the commencement of the Confirmation Hearing, (iv) fixed 4:00 p.m. prevailing Central Time on January 29, 2019, as the deadline for filing and serving objections to confirmation of the Plan and votes accepting or rejecting the Plan, and (v) fixed 9:00 a.m. prevailing Central Time on February 12, 2019, as the deadline for the receipt of opt-out certifications.

C.      Ballots. All procedures used to distribute solicitation materials to the applicable holders of Claims and Interests and to tabulate ballots were fair and conducted in accordance with the Disclosure Statement Approval Order, the Bankruptcy Code, the Bankruptcy Rules, the local rules of the Bankruptcy Court for the Eastern District of Missouri (the "Local Rules"), and all other applicable rules, laws, and regulations.

D.      Solicitation. The Proponents and their representatives, attorneys, and advisors have solicited votes on the Plan in good faith and in compliance with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, the Disclosure Statement, the Disclosure Statement Approval Order, the Local Rules, all other applicable provisions of the Bankruptcy Code, and all other applicable rules, laws, and regulations applicable to such solicitation.

E.      Good Faith Solicitation (11 U.S.C. § 1125(e)). The Proponents and their representatives, attorneys, and advisors are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code as well as the exculpation and limitation of liability provisions set forth in Article VIII of the Plan.

F.      Ballot Report. On February 5, 2019, the Proponents filed the Ballot Report containing the results of the ballot tabulation for each of the voting Classes under the Plan. Based upon the Ballot Report, the Court finds that voting by the holders of Claims in the various Classes entitled to vote on the Plan was as indicated in the Ballot Report as filed with this Court.

G.      Impaired Classes Voting to Accept the Plan. As evidenced by the Ballot Report, subject to the clarifications contained therein and as described on the record at the Confirmation Hearing, all Voting Classes have accepted the Plan with respect to each of the Debtors in accordance with section 1126 of the Bankruptcy Code.

H.      Plan Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(1)). The Plan satisfies section 1129(a)(1) of the Bankruptcy Code because it complies with the applicable provisions of the Bankruptcy Code.

I.      Proponents' Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2)). The Proponents have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Disclosure Statement Approval Order, and other orders of this Court, thereby satisfying section 1129(a)(2) of the Bankruptcy Code with respect to all of the Debtors.  The Debtors are proper debtors under section 109 of the Bankruptcy Code and Proponents are proper proponents of the Plan under section 1121(a) of the Bankruptcy Code.  The Proponents have complied with the applicable provisions of the Bankruptcy Code during the Chapter 11 Cases, including as provided or permitted by orders of the Court.

J.      Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)). The Court has examined the totality of the circumstances surrounding the filing of the Chapter 11 Cases, the formulation of the Plan, the Plan and all modifications thereto and overruled any objections to confirmation to the finding that the requirements of section 1129(a)(3) have been satisfied.  The Proponents and their directors, officers, employees, and advisors, among others, and each of their respective professionals negotiated the Plan in good faith and at arm's length and participated in the Plan formulation process in good faith.  Therefore, the Proponents have proposed the Plan in good faith and not by any means forbidden by law, and section 1129(a)(3) of the Bankruptcy Code is satisfied with respect to the Plan and the Debtors.

K.      Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)).  Any payment made or to be made by the Debtors for services or for costs and expenses in connection with the Chapter

{15323/00016/2460779.DOCX.}

11 Cases, including administrative expense and substantial contribution claims under sections 503 and 507 of the Bankruptcy Code, or in connection with the Plan and incident to the Chapter 11 Cases, either has been approved by or is subject to the approval of the Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code with respect to the Debtors.

L.    Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5)).  On January 22, 2019, the Debtors filed a Plan Supplement [Dkt. No. 185] that discloses the proposed initial boards of directors for the Reorganized Debtors as well as the proposed interim compensation for "insiders" of the Reorganized Debtors.  Each officer shall serve from and after the Effective Date in accordance with applicable non-bankruptcy law and the terms of the Reorganized Debtors' organizational documents also filed in the Plan Supplement.  Therefore, the Proponents have disclosed the initial officers and directors of the Reorganized Debtors, including the identity of any insider that will be employed or retained by the Reorganized Debtors.  The appointment to such office of each individual is consistent with the interests of holders of Claims and Interests, and with public policy.  Therefore, section 1129(a)(5) of the Bankruptcy Code is satisfied with respect to the Plan with respect to the Debtors.

M.    No Rate Changes (11 U.S.C. § 1129(a)(6)).  Section 1129(a)(6) of the Bankruptcy Code does not apply with respect to any of the Debtors because there is no governmental regulatory commission that has jurisdiction over the Debtors' or the Reorganized Debtors' rates.

N.    Best Interests Test (11 U.S.C. § 1129(a)(7)).  The liquidation analysis attached as Exhibit B to the Disclosure Statement, the proffered testimony of David Herman, and the other evidence proffered or admitted at the Confirmation Hearing (1) are persuasive and credible, (2) are based upon reasonable and sound assumptions, (3) provide a reasonable estimate of the liquidation values of the Debtors upon hypothetical conversion to cases under Chapter 7 of the Bankruptcy Code, and (4) establish that each holder of a Claim or Interest in an impaired Class that has not accepted the Plan will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such holder would receive if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code on such date.  Therefore, the Plan satisfies section 1129(a)(7) of the Bankruptcy Code with respect to the Debtors.

O.    Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)).  As stated on the record at the Confirmation Hearing, the Court finds that all impaired Voting Classes in the Chapter 11 Cases of the Debtors have voted or otherwise agreed to accept the Plan.  Therefore, the Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to all of the Debtors.

P.    Treatment of Administrative and Priority Tax Claims and Other Priority Claims (11

U.S.C. § 1129(a)(9)). The treatment of Administrative Claims and Priority Non-Tax Claims under the Plan satisfies the requirements of section 1129(a)(9)(A) and (B) of the Bankruptcy Code, and the treatment of Priority Tax Claims under the Plan satisfies the requirements of section 1129(a)(9)(C) of the Bankruptcy Code with respect to all of the Debtors.

Q.      <u>Acceptance by Impaired Class (11 U.S.C. § 1129(a)(10))</u>.  Each impaired Class of Claims and Interests entitled to vote on the Plan has voted or otherwise agreed to accept the Plan, and at least one Class of Claims and Interests in each Debtor's bankruptcy case accepted the Plan without including the acceptance of the Plan by any insider.  Therefore, section 1129(a)(10) of the Bankruptcy Code is satisfied with respect to the Plan with respect to all of the Debtors.

R.      <u>Feasibility (11 U.S.C. § 1129(a)(11))</u>.  The proffered testimony of David Herman, and additional evidence proffered or admitted at the Confirmation Hearing (i) are persuasive and credible, (ii) have not been controverted by other credible evidence or sufficiently challenged in any of the objections to the Plan, and (iii) establish that the Plan is feasible and that confirmation of the Plan is not likely to be followed by the liquidation of the Reorganized Debtors or the need for further financial reorganization of the Reorganized Debtors.  Therefore, the Plan satisfies section 1129(a)(11) of the Bankruptcy Code with respect to the Debtors.

S.      <u>Payment of Fees (11 U.S.C. § 1129(a)(12))</u>.  Fees payable under 28 U.S.C. § 1930, have paid or, pursuant to Sections 13.09 of the Plan, will be paid on or before the Effective Date, thereby satisfying section 1129(a)(12) of the Bankruptcy Code with respect to the Debtors.

T.      <u>Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13))</u>.  The Debtors do not maintain retiree benefits plans contemplated by section 1129(a)(13) of the Bankruptcy Code and this section does not apply.

U.      <u>Domestic Support Obligations (11 U.S.C. § 1129(a)(14))</u>.  The Debtors are corporate entities not subject to any domestic support obligations and this section does not apply.

V.      <u>Rights of Objecting Unsecured Creditors in Individual Debtor cases (11 U.S.C. §1129(a)(15))</u>.  The Debtors are corporate entities, not individuals, and this section does not apply.

W.      <u>Transfers of Property under a Plan by Corporation or Trust that is Not a Moneyed, Business, or Commercial Corporation or Trust (11 U.S.C. § 1129(a)(16))</u>.  The Debtors are not corporations or trusts that are not moneyed, business, or commercial corporations and this section does not apply.

X.      11 U.S.C. § 1111(b).  As Allowed Senior Secured Claims have voted to accept the Plan and Other Secured Claims are not Impaired under the Plan, Section 1111(b) does not apply.

AA. Principal Purpose of Plan (11 U.S.C. § 1129(d)).  The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933 (15 U.S.C. § 77e).  Accordingly, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

BB. Burden of Proof.  The Proponents, as proponents of the Plan, have met their burden of proving the elements of sections 1129(a) of the Bankruptcy Code by a preponderance of evidence, which is the applicable evidentiary standard.  The Court also finds that, to the extent applicable, the Debtors' burden under Section 1129(b) of the Bankruptcy Code has been satisfied.

CC. Executory Contracts.   The Debtors have exercised reasonable business judgment in determining whether to assume or reject the Debtors' executory contracts and unexpired leases pursuant to Article VI of the Plan.  Each assumption or rejection of an executory contract or unexpired lease pursuant to the Plan shall be legal, valid, and binding upon the applicable Debtor or Reorganized Debtor and their assignees or successors and all non-Debtor parties (and their assignees or successors) to such executory contract or unexpired lease, all to the same extent as if such assumption or rejection had been effectuated pursuant to an order of the Court entered before the Confirmation Date under section 365 of the Bankruptcy Code.

DD. Assumption of Contracts and Leases.  A list of each executory contract and unexpired lease to be assumed under the Plan was filed in the *Schedule of Assumed Executory Contracts and Unexpired Leases and Proposed Cure Amounts* [Dkt. No. 189] (the "Assumed Contracts and Leases") and attached in final form to the Plan.  One timely Cure Amount Objection (defined below) was received by the Debtors from SoundExchange, Inc. ("SoundExchange") to the Assumed Contracts and Leases.  The Debtors and SoundExchange remain in good-faith settlement discussions as of the time of this Confirmation Order and as such have agreed to adjourn the hearing on the Cure Amount Objection.  Pursuant to the terms of Article VI of the Plan, defaults (if any) under or relating to each of the Assumed Contracts and Leases, to the extent required by Section 365(b) of the Bankruptcy Code, will have been cured, or adequate assurance that the Reorganized Debtors or their successors or assignees will promptly cure has been provided.  The Court finds that the payment of cure costs as contemplated in Article VI of the Plan (as specifically modified, where appropriate, by this Confirmation Order) constitutes prompt and proper cure of such defaults and further finds that adequate assurances of future performance have been provided to counterparties to the Assumed Contracts and Leases.

EE.  Releases and Discharges.  The releases and discharges of Claims and causes of action described in Article XI of the Plan constitute good faith compromises and settlements of the matters covered thereby. Such compromises and settlements are (i) made in exchange for consideration, (ii) in the best interests of the Debtors' estates, claimholders and parties-in-interest, (iii) fair, equitable and reasonable, (iv) integral elements of the restructuring and resolution of the Chapter 11 Cases in accordance with the Plan and (v) supported by the Debtors.  Each of the discharge, release, injunction, indemnification and exculpation provisions set forth in the Plan: (a) is within the jurisdiction of the Court under 28 U.S.C. §§ 1334(a), (b), and (d); (b) is an essential means of implementing the Plan pursuant to section 1123(a)(5) of the Bankruptcy Code; (c) is an integral element of the transactions incorporated into the Plan; (d) confers material benefit on, and is in the best interests of, the Debtors, their estates and their creditors; (e) is important to the overall objectives of the Plan to finally resolve all Claims among or against the parties-in-interest in the Chapter 11 Cases with respect to the Debtors, their organization, capitalization, operation and reorganization; and (f) is consistent with sections 105, 1123, 1129, and other applicable provisions of the Bankruptcy Code.

FF.  Modifications to the Plan.  The modifications to the Plan set forth in the Confirmation Order, if any, and as filed with Court at Docket No. 205 (the "First Amended Plan") have been made in a manner consistent with Section 7.02 of the Plan and constitute technical changes that do not materially adversely modify the treatment of any Claims or Interests.  Accordingly, pursuant to Bankruptcy Rule 3019, these modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or re-solicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that holders of Claims be afforded an opportunity to change previously cast acceptances or rejections of the Plan.  Accordingly, pursuant to Bankruptcy Rule 3019, these modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or re-solicitation of votes under section 1126 of the Bankruptcy Code.  As indicated on the record at the Confirmation Hearing, all holders of Claims in Voting Classes voted to accept the Plan.

GG.  Plan Conditions To Confirmation.  The conditions to Confirmation set forth in the Plan have been satisfied or waived in accordance with the terms of the Plan.

HH.  Plan Conditions To Consummation.  As stated on the record set forth herein, the Effective Date of the Plan remains subject to the filing of certain final forms of Plan Supplement Documents which the Debtors anticipate filing in short order and also FCC approval which cannot move forward until the entry of this Confirmation Order.

II.  Agreements and Other Documents.  The Proponents have made adequate and sufficient disclosure of: (i) the commitment to amend the organizational documents of the Reorganized Debtors as necessary to satisfy the provisions of the Plan and the Bankruptcy Code; (ii) the distributions to be made pursuant to the Plan; (iii) the mechanism for, and the documents associated with, the effectuation of the transfer of the FCC licenses pursuant to the Plan; (iv) the adoption, execution, delivery and implementation of all contracts, leases, instruments, releases and other agreements or documents relating to any of the foregoing; (v) the adoption, execution and implementation of employment agreements, if any; and (vi) the other matters provided for under the Plan involving the corporate structure of the Reorganized Debtors.

JJ.  Preservation of Causes of Action.  It is in the best interests of the claimholders that (i) all causes of action that are not expressly released under the Plan shall be retained by the Reorganized Debtors.

KK.  Distributions of New Equity Are Exempt.  Any equity interests distributable on account of certain creditors' claims or otherwise pursuant to the Plan, including the issuance and distribution of New Equity, are exempt, pursuant to section 1145(a) of the Bankruptcy Code, from section 5 of the Securities Act of 1933, as amended (the "Securities Act"), and any state or local laws requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker or dealer in, a security ("State Securities Laws") and such laws do not apply to the offer of such securities (the "Exempt Securities").

NOW, based upon these Findings and Conclusions and the record before the Court at the Confirmation Hearing, and good cause appearing therefore,

**IT IS ORDERED, ADJUDGED AND DECREED** that

1.  Confirmation.  The Plan, attached hereto as **Exhibit A**, is approved in its entirety and confirmed under section 1129 of the Bankruptcy Code which includes the modifications set forth herein.  The terms of the Plan as amended and the exhibits and schedules thereto as amended are incorporated by reference into and are an integral part of this Confirmation Order. Each term and provision of the Plan is valid, binding and enforceable as though fully set forth herein.  The failure specifically to include or reference any particular term or provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such term and provision, it being the intent of the Court that the Plan be confirmed in its entirety.

2.  Objections.  All Objections to confirmation of the Plan that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are hereby overruled on the merits.

3. <u>Provisions of Plan and Order Nonseverable and Mutually Dependent</u>.  The provisions of the Plan, this Confirmation Order, and the Findings and Conclusions are nonseverable and mutually dependent.

4. <u>Classification of Claims/Interests and Allowed Amounts of Claims</u>.  The classification of Claims and Interests and Allowed Amounts of Claims for purposes of the distributions to be made under the Plan shall be governed solely by the terms of the Plan.  The classifications or the relevant amount of a Claim set forth by the Proponents or the Claimant on any ballots or supplemental ballots tendered to or returned by the claimholders in connection with voting on the Plan (a) were set forth on such ballots or supplemental ballots solely for purposes of voting to accept or reject the Plan, (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims under the Plan for distribution purposes, (c) may not be relied upon by any claimholder as representing the actual classification of such Claims under the Plan for distributions purposes, and (d) shall not be binding on the Proponents, the Debtors, the Reorganized Debtors, or their estates.

5. <u>Effects of Confirmation; Successors and Assigns</u>.  The Proponents are authorized to consummate the Plan, subject to any deadlines and conditions to consummation contained in the Plan.  Subject to the occurrence of the Effective Date under the Plan, and notwithstanding any otherwise applicable law, the terms of the Plan (including the Exhibits thereto and all documents and agreements executed pursuant to the Plan) and this Confirmation Order shall be binding on (a) the Debtors, (b) the Reorganized Debtors, (c) all holders of Claims against and Interests in the Debtors, whether or not impaired under the Plan and whether or not, if impaired, such holders voted on or voted to accept or reject the Plan, (d) each Person acquiring property under the Plan, (e) any other party-in-interest, (f) any Person making an appearance in these Chapter 11 Cases, and (g), to the extent acting in such capacities in relation to the Plan, each of the foregoing's respective heirs, successors, assigns, trustees, executors, administrators, affiliates, officers, directors, agents, representatives, attorneys, beneficiaries, or guardians.  Upon the occurrence of the Effective Date with respect to each Debtor, the Plan shall be deemed substantially consummated as to such Debtor.

6. <u>Continued Corporate Existence; Vesting Of Assets</u>.  On the Effective Date, all property of the estates shall vest as provided in Article V of the Plan. As of the Effective Date, each of the Reorganized Debtors' business and use, acquire, and dispose of property and settle and compromise Claims without supervision of the Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan or this Confirmation Order.  The Reorganized Debtors are authorized and permitted to decline to prosecute, settle, compromise, or otherwise resolve any cause of action, litigation, Claim or Interest or any other matter without approval of the Bankruptcy Court.

7. <u>Intercompany Claims</u>.  The treatment of Intercompany Claims provided in Section 4.06 of the Plan is approved in its entirety.

8. <u>Release of Liens</u>.  Except as otherwise provided in the Plan or this Confirmation Order, or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan (including, for the avoidance of doubt, the New Term Loan), on the Effective Date, all mortgages, deeds of trust, liens or other security interests against the property of any Estate are fully released and discharged (except to the extent reinstated and/or amended in accordance with the Plan), and all right, title and interest of any holder of such a mortgage, deed of trust, lien or other security interest, including any right to any collateral thereunder, shall revert to the applicable Reorganized Debtor and its successors and assigns irrespective of any filing or recordation of any releases.

9. <u>Discharge of Reorganized Debtors</u>.

i.   Except as expressly provided in the Plan (and documents executed in connection therewith) or this Confirmation Order, the Reorganized Debtors are discharged effective upon the Effective Date from any "debt" (as that term is defined in section 101(12) of the Bankruptcy Code), and the Reorganized Debtors' liability in respect thereof is extinguished completely, whether the debt is reduced to judgment or not, liquidated or unliquidated, contingent or noncontingent, asserted or unasserted, fixed or unfixed, matured or unmatured, disputed or undisputed, legal or equitable, or known or unknown, if the debt arose from any agreement of the Reorganized Debtors entered into or obligation of the Reorganized Debtors incurred before the Effective Date or from any conduct of the Reorganized Debtors prior to the Effective Date or otherwise arose before the Effective Date, including all obligations for interest, if any, on any such debts, whether such interest accrued before, on, or after the Petition Date.

ii.  Pursuant to section 1141(d) of the Bankruptcy Code, except as otherwise specifically provided in the Plan or in this Confirmation Order (including, without limitation, with respect to the rights of parties to file and prosecute Administrative Expense Claims, and applications for payment of professional fees, each as referenced in the Plan and this Confirmation Order), confirmation of the Plan discharges and releases, effective as of the Effective Date (but subject to the occurrence of the Effective Date), the Reorganized Debtors and their estates (x) from all Claims and causes of action, whether known or unknown, and (y) from liabilities of, liens on, obligations of, rights against, and Interests in the Reorganized Debtors or any of their assets or properties, in each case regardless of

whether any property has been distributed or retained pursuant to the Plan on account of such Claims, causes of action, rights, liabilities, liens, obligations and Interests, and in each case including (x) Claims, causes of actions, rights, liabilities, liens, obligations and Interests that arose before the Effective Date, (y) any Claims, causes of actions, rights, liabilities (including withdrawal liabilities), liens, obligations and Interests to the extent such Claims, causes of actions, rights, liabilities (including withdrawal liabilities), liens, obligations and Interests related to services performed by employees of the Reorganized Debtors prior to the Petition Date and that arise from a termination of employment or a termination of any employee regardless of whether such termination occurred prior to or after the Confirmation Date, and (z) all Claims of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, in each case whether or not (a) a proof of claim or interest based upon such Claims, causes of action, rights, liabilities, liens, obligations or Interests is filed or deemed filed under section 501 of the Bankruptcy Code, (b) a Claim or Interest based upon such Claims, causes of action, rights, liabilities, liens, obligations or Interests is allowed under section 502 of the Bankruptcy Code, or (c) the holder of such a Claim, cause of action, right, liability, lien, obligation or Interests accepted the Plan.

iii.    This Confirmation Order shall be a judicial determination of the discharge of all Claims against and Interests in the Reorganized Debtors, subject to the Effective Date occurring. As of the Effective Date, except as provided in the Plan (and documents executed in connection therewith) or in the Confirmation Order (including, without limitation, with respect to the rights of parties to file and prosecute Administrative Expense Claims and applications for payment of professional fees, each as referenced in the Plan and this Confirmation Order), all Persons shall be precluded from asserting against the Reorganized Debtors any other or further claims, debts, rights, causes of action, claims for relief, liabilities, or equity interests relating to the Reorganized Debtors based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date. In accordance with the foregoing, except as provided in the Plan (and documents executed in connection therewith) or the Confirmation Order, this Confirmation Order shall be a judicial determination of discharge of all such Claims and Interests and other debts and liabilities against the Reorganized Debtors including all agreements for calls, puts, issuance of warrants, or sales of securities existing as of the Petition Date, pursuant to sections 524 and 1141 of the Bankruptcy Code, and such discharge shall void

any judgment obtained against the Reorganized Debtors at any time, to the extent that such judgment relates to a discharged Claim or terminated Interest.

10. <u>Releases, Limitations of Liability and Indemnification</u>.  The releases set forth in Article VIII of the Plan, and the exculpation and limitation of liability provisions set forth in Article VIII of the Plan are incorporated in this Confirmation Order as if set forth in full herein and are hereby approved.

11. <u>Injunctions</u>.   Except as otherwise specifically provided in the Plan and except as may be necessary to enforce or remedy a breach of the Plan, from and after the Effective Date (and subject to the occurrence thereof), all Persons or entities who have held, hold or may hold Claims or Interests  against any of the Debtors are permanently enjoined, from and after the Confirmation Date, from (i) commencing or continuing in any manner an action or other proceeding of any kind on any such Claim or Interest against any of the Reorganized Debtors, (ii) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against any Reorganized Debtor with respect to such Claim or Interest, (iii) creating, perfecting or enforcing any encumbrance of any kind against any Reorganized Debtor with respect to such Claim or Interest, (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due to any Reorganized Debtor or against the property or interests in the property of any Reorganized Debtor with respect to such Claim or Interest, (v) prosecuting any applications to the FCC or objections to applications filed with the FCC contrary to the provisions of this Plan, and (vi) asserting any Claims, Interest, or causes of action that are satisfied, released, or discharged hereby and under the Plan to the fullest extent permissible under applicable law, including to the extent provided for or authorized by Article VIII of the Plan and Sections 524 and 1141 of the Bankruptcy Code.

12. <u>Automatic Stay</u>.  All injunctions and stays in effect in the Chapter 11 Cases pursuant to section 105 or 362(a) of the Bankruptcy Code or otherwise on the Confirmation Date shall continue to be in full force and effect until the Effective Date, at which time they shall be dissolved and of no further force or effect, and be replaced by the injunctions set forth herein and in sections 524 and 1141 of the Bankruptcy Code; <u>provided</u>, <u>however</u>, that nothing herein shall bar the filing of financing documents (including Uniform Commercial Code financing statements, security agreements, leases, mortgages, trust agreements, bills of sale or documents similar to any of the foregoing), the enforcement of remedies in connection with a breach of the Plan, or the taking of such other actions as are necessary to effectuate the transactions specifically contemplated by the Plan or by this Confirmation Order prior to the Effective Date.

13. <u>Plan Supplement</u>.  The documents attached to the Plan Supplement, and any amendments, modifications, and supplements thereto, and all documents contemplated thereby or executed to implement or supplement the provisions thereof, and all documents and agreements introduced into evidence by the

{15323/00016/2460779.DOCX.}

Reorganized Debtors at the Confirmation Hearing (including all exhibits and attachments thereto and documents referred to therein), when they are in their final form, and the execution, delivery, and performance thereof by the Reorganized Debtors, are authorized and approved, subject to the consent and approval rights provided to the Senior Agent in the Plan.  Without any requirement for further order or authorization of the Bankruptcy Court, the Reorganized Debtors and their successors are authorized and empowered to make all modifications to any and all documents included as part of the Plan Supplement that do not materially modify the terms of such documents and are consistent with the Plan; provided, however, all such documents and any such modifications thereto shall be subject to the consent of the Senior Agent.  Upon the execution and delivery of the documents attached to the Plan Supplement and all additional documents referred to above by all parties thereto, such documents shall constitute legal, valid and binding obligations of the respective parties thereto, enforceable in accordance with their terms and, to the extent applicable, shall create, as of the Effective Date, all liens and security interests purported to be created thereby.

14. <u>Matters Relating to Implementation of the Plan; General Authorizations</u>. The approvals and authorizations specifically set forth in this Confirmation Order are nonexclusive and are not intended to limit the authority of any Reorganized Debtor, or any officer or director thereof to take any and all actions necessary or appropriate to implement, effectuate and consummate any and all documents or transactions contemplated by the Plan or this Confirmation Order.  Pursuant to this Confirmation Order and applicable law (including any analogous laws in the jurisdiction of organization of each Debtor), the Reorganized Debtors are authorized and empowered, without action of their respective members, stockholders or boards of directors, but subject to consent rights, if any, set forth in the Plan, to take any and all such actions as any of their executive officers may determine are necessary or appropriate to implement, effectuate and consummate any and all documents or transactions contemplated by the Plan or this Confirmation Order, including: (a) to enter into, execute and deliver, acknowledge, adopt or amend, as the case may be, any of the contracts, leases, instruments, releases and other agreements or documents and Plan, including deeds, assignments, conveyances, and other assurances, documents, instruments of transfer, Uniform Commercial Code financing statements, trust agreements, mortgages, indentures, security agreements, bills of sale and documents similar to any of the foregoing documents to be entered into, executed, delivered, acknowledged, adopted or amended in connection with the Plan and the transactions contemplated by the Plan, and, following the Effective Date, each of such contracts, leases, instruments, releases and other agreements shall be a legal, valid and binding obligation of, and enforceable against, the applicable Debtor, Reorganized Debtor, and any other Person that is a party thereto, in accordance with its terms and is entered into for good and valuable consideration, including the benefits of the Plan; (b) to issue for distribution or reserve

for issuance in accordance with the terms of the Plan, any membership rights, stock, or warrants provided for in the Plan (upon such issuance, all such shares or warrants shall be duly authorized and validly issued and outstanding, fully paid, nonassessable, free and clear of any mortgage, lien, pledge, security interest or other encumbrance of any kind, and not subject to pre-emptive or similar rights of third parties); and (c) to authorize any of the Debtors, Reorganized Debtors to engage in any of the activities set forth in this paragraph or otherwise contemplated by the Plan. Subject to consent rights, if any, set forth in the Plan, the appropriate officer of the Debtors, Reorganized Debtors, or their respective designees shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, this Confirmation Order, and any and all documents or transactions contemplated by the Plan or this Confirmation Order, all without further application to or order of the Court and whether or not such actions or documents are specifically referred to in the Plan, the Disclosure Statement, the Disclosure Statement Approval Order, this Confirmation Order, or the exhibits or schedules to any of the foregoing, and the signature of such officer on a document shall be conclusive evidence of such officer's determination that such document and any related actions are necessary and appropriate to effectuate or further evidence the terms and conditions of the Plan, this Confirmation Order, or other documents or transactions contemplated by the Plan or this Confirmation Order.  The secretary of each Debtor or Reorganized Debtor is authorized to certify or attest to any of the foregoing actions.  To the extent that, under applicable non-bankruptcy law, any of the foregoing actions otherwise would require the consent or approval of the members, stockholders, or the board of directors or other governing body of any of the Debtor or Reorganized Debtor, this Confirmation Order, pursuant to section 1142 of the Bankruptcy Code, shall constitute such consent or approval, and such actions are deemed to have been taken by unanimous action of the stockholders and directors (or members and/or managing member(s)) of the appropriate Debtor or Reorganized Debtor.  All such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Court and shall be deemed effective pursuant to applicable law (including any laws in the jurisdiction of organization of each Debtor) and without further corporate act or action under applicable law.

15. <u>Directors and Officers of Reorganized Debtors</u>.  On the Effective Date, the management, control, and operation of the Reorganized Debtors shall vest pursuant to the organizational documents of the Reorganized Debtors.

16. <u>Preservation of Causes of Action</u>. On the Effective Date, all causes of action that are not expressly released under the Plan shall be retained by the Reorganized Debtors.

17. <u>Exemption from Certain Taxes and Recording Fees</u>.  Pursuant to section 1146(c) of the Bankruptcy Code, the effect of which shall not be limited by this Order, the issuance, transfer or exchange of any security, or the making, delivery, filing or recording of any instrument of transfer under, or in connection with, the Plan shall not be taxed under any law imposing a recording tax, stamp tax, transfer tax or similar tax.  Furthermore, without limiting the foregoing, any transfers from a Debtor to a Reorganized Debtor, or any other Person pursuant to or as contemplated by the Plan, or any agreement regarding the transfer of title to or ownership of, or the granting of a mortgage, deed of trust, deed to secure debt or other lien on or security interest in, any of the Debtors' property in the United States pursuant to or as contemplated by the Plan, will not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, sales or use tax, mortgage tax, stamp act, real estate transfer tax, excise tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment.  All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(c) of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.  The Court shall retain specific jurisdiction with respect to these matters.

18. <u>Governmental Approvals Not Required</u>.  This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules or regulations of any State or any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments or agreements, and any amendments or modifications thereto, and any other acts referred to in or contemplated by the Plan, the Disclosure Statement and any documents, instruments or agreements, and any amendments or modifications thereto; <u>provided</u>, <u>however</u>, that the assignment or transfer of control of the licenses issued by the FCC shall be subject to compliance with the rules and regulations of the FCC.

19. <u>Assumption of Executory Contracts and Unexpired Leases</u>.  The provisions of Article VI of the Plan relating to assumption of executory contracts and unexpired leases are approved.  Only those executory contracts and unexpired leases to which the Debtors (or any of them) are a party that are specifically listed on the Assumed Contracts and Leases to the Plan shall be deemed automatically assumed and reinstated in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code as of the Effective Date.  The hearing on the Cure Amount Objection of SoundExchange is adjourned and remains subject to settlement discussions between Debtors and SoundExchange.  All executory contracts and unexpired leases assumed by the Debtors during the Chapter 11 Cases or under the Plan shall be assigned and transferred to, and remain in full force and effect for the benefit of, the Reorganized Debtors,

notwithstanding any provision in such contract or lease (including those described in sections 365(b)(2) and 365(f) of the Bankruptcy Code and any such provision implicated by the consummation of the Plan or any transaction contemplated by the Plan) that prohibits or restricts such assignment or transfer or that enables or requires termination or modification of such contract or lease.  This Confirmation Order shall constitute an order approving such assumptions, described in Article VI of the Plan, pursuant to section 365 of the Bankruptcy Code, upon occurrence of the Effective Date, as of the Confirmation Date.  Each executory contract and unexpired lease that is assumed and relates to the use, ability to acquire, or occupancy of real property shall include (a) all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affect such executory contract or unexpired lease and (b) all executory contracts, unexpired leases, agreements or other documents appurtenant to the premises, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, reciprocal easement agreements, and any other interests in real estate or rights in rem related to such premises, unless any of the foregoing agreements has been rejected pursuant to a Final Order of the Bankruptcy Court or is otherwise rejected as a part of the Plan.

20. <u>Payments Related to Assumption of Executory Contracts and Unexpired Leases</u>.  This Confirmation Order shall constitute an order approving the assumption of executory contracts and unexpired leases as set forth in Article VI to the Plan and the Assumed Contracts and Leases, pursuant to section 365 of the Bankruptcy Code, which assumption shall be, upon occurrence of the Effective Date, as of the Confirmation Date.  The provisions (if any) of each executory contract or unexpired lease to be assumed and reinstated under the Plan which are or may be in default shall be satisfied solely by the Cure Amount as indicated on Assumed Contracts and Leases.  Objections to assumption or rejection including Cure Amount Objections, must have been raised in an objection filed pursuant to the confirmation of the Plan ("<u>Cure Amount Objections</u>").   If no Cure Amount Objection was timely filed and served, the non-Debtor counterparty to the contract or lease being assumed is deemed to have consented to amount and promptness of the Cure Amount payment as contemplated in Article VI of the Plan and to the assumption of the contract or lease, and the Cure Amount set forth on the Assumed Contracts and Leases of the Plan (as of the date indicated therein) shall be controlling notwithstanding anything to the contrary in any assumed contract or lease or other document, and the party to such contract or lease shall be forever barred from objecting to the assumption of the contract or lease and from asserting, collecting, or seeking to collect any additional amounts relating thereto against the Debtors or Reorganized Debtors.

21. <u>Rejection of Executory Contracts and Unexpired Leases</u>.  The provisions of Article VI of the Plan relating to rejection of executory contracts and unexpired leases are approved.  Except with respect to

{15323/00016/2460779.DOCX.}

executory contracts and unexpired leases that have previously been assumed on or before the Confirmation Date, all executory contracts and unexpired leases not assumed pursuant to the Plan, with the exception of SoundExchange (collectively, the "Rejected Contracts and Leases") shall, subject to the occurrence of the Effective Date, be deemed automatically rejected on the Confirmation Date (with such rejection effective as of the Petition Date).  This Confirmation Order shall constitute an order of the Court approving such rejections pursuant to section 365 of the Bankruptcy Code.  All of the Rejected Contracts and Leases shall be rejected only to the extent that any such contract or lease constitutes an executory contract or unexpired lease.

22. Professional Claims and Final Fee Applications.  Each professional person or firm retained with approval by order of the Bankruptcy Court or requesting compensation in the Chapter 11 Cases pursuant to sections 330 and/or 503(b) of the Bankruptcy Code, with the exception of any ordinary course professionals retained by the Debtors pursuant to an order of the Court (a "Professional") or any professional whose fees and expenses are payable under the order approving the Debtors' use of cash collateral and granting adequate protection, shall be required to file an application for allowance of final compensation and reimbursement of expenses in the Chapter 11 Cases incurred through the Confirmation Date (a "Final Fee Application") within sixty (60) days of the entry of this Confirmation Order (the "Final Fee Application Deadline").  Objections to any such application shall be filed no later than 48 hours before the hearing to consider such applications.  Any unpaid pre-Confirmation Date professional fees and expenses awarded by the Bankruptcy Court pursuant to the foregoing applications shall be paid by the Reorganized Debtors.  Professionals that are required to file and serve a Final Fee Application that do not file and serve such a Final Fee Application by the Final Fee Application Deadline will be forever barred from asserting such Administrative Claims against the applicable Debtor or their respective property, and such Administrative Claims will be deemed discharged as of the Effective Date.

23. Exemption From Securities Laws.  Pursuant to and to the fullest extent permitted by section 1145 of the Bankruptcy Code, Section 5 of the Securities Act and any State Securities Laws do not apply to the offer, sale, issuance, exchange, distribution and/or redemption under the Plan of any equity rights and/or beneficial interests thereunder and such offer, sale, issuance, exchange, distribution and/or redemption will be exempt from registration under the Securities Act of 1933, as amended, and all rules and regulations promulgated thereunder.

24. Resolution of Claims and Interests.  Unless otherwise ordered by the Court, any Claim that is not an Allowed Claim shall be determined, resolved, or adjudicated in accordance with the terms of the Plan, Reorganized Debtors shall have the right to the exclusion of all others (except as to applications for allowances of compensation and reimbursement of expenses under sections 330 and 503 of the Bankruptcy

Code) to make and file, prosecute, settle, compromise, or otherwise resolve Claims against the Debtors and Objections to Claims.

25. <u>Plan Settlements</u>.  The Plan settlements and the respective terms thereof as set forth in the Plan, are hereby approved pursuant to Bankruptcy Rule 9019 as fair, equitable, prudent, and reasonable compromises of the controversies and Claims resolved thereby and are binding upon all Persons affected thereby, and shall be effectuated in accordance with the terms thereof.

26. <u>Payment of Fees</u>.  All fees payable pursuant to section 1930 of title 28 of the United States Code, as of the entry of this Confirmation Order as determined by the Court at the Confirmation Hearing, shall be paid on the Effective Date.  Each of the Reorganized Debtors and the Plan Administrator will continue to pay fees pursuant to section 1930 of title 28 of the United States Code as required by that section as and when due until a final decree is entered with respect to a particular Debtor.

27. <u>Authorization to Consummate Plan</u>.  The Court authorizes the Proponents to consummate the Plan.  The Proponents are authorized to execute, acknowledge, and deliver such deeds, assignments, conveyances, and other assurances, documents, instruments of transfer, Uniform Commercial Code financing statements, trust agreements, mortgages, indentures, security agreements, bills of sale and documents similar to any of the foregoing and to take such other actions as may be reasonably necessary to perform the terms and provisions of the Plan, all transactions contemplated by the Plan, and all other agreements related thereto.

28. <u>Retention of Jurisdiction</u>.  Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding the entry of this Confirmation Order or the occurrence of the Effective Date, the Court shall retain exclusive jurisdiction of all matters arising out of, or related to, these Chapter 11 Cases and the Plans, as provided in the Plan, to the fullest extent permitted by law, including, without limitation, to:

(a)     Hear and determine pending applications for the assumption or rejection of executory contracts or unexpired leases, the allowance of Claims and Administrative Claims resulting therefrom and any disputes with respect to executory contracts or unexpired leases relating to facts and circumstances arising out of or relating to the Chapter 11 Cases;

(b)     Allow, disallow, determine, liquidate, classify, estimate, or establish the priority or secured or unsecured status of any Claim or Existing Equity Interest and to determine and resolve any objections to the allowance or priority of Claims or Equity Interests;

(c)     Enter and implement such orders as may be appropriate in the event the Confirmation Order is, for any reason, stayed, revoked, modified or vacated;

(d)      Issue such orders in aid of execution of the Plans, to the extent authorized by section 1142 of the Bankruptcy Code;

(e)      Consider any amendments to or modifications of the Plan or cure any defect or omission, or reconcile any inconsistency, in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(f)      Hear and determine any disputes or issues arising in connection with the interpretation, implementation or enforcement of the Plan, the Confirmation Order, any transactions or payments contemplated hereby, any agreement, instrument, or other document governing or relating to any of the foregoing or any settlement approved by the Bankruptcy Court;

(g)      Determine requests for payment of Claims entitled to priority under section 507(a)(1) of the Bankruptcy Code;

(h)      Determine other requests for payment of Administrative Claims, Priority Tax Claims, and Priority Non-Tax Claims;

(i)      Hear and determine all applications for allowance of compensation and reimbursement of expenses of Professionals under sections 330, 331 and 503(b) of the Bankruptcy Code for periods ending on or before the Effective Date;

(j)      Determine any motions pending on the Confirmation Date for the rejection, assumption, or assignment of executory contracts and unexpired leases and the allowance of any Claim allegedly resulting therefrom;

(k)      Recover all assets of the Debtors, property of the Debtors' estates and the assets of the Reorganized Debtors, wherever located;

(l)      Ensure that distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Plans;

(m)      Determine or resolve any motions, adversary proceedings, contested, or litigated matters, and any other matters and grant or deny any applications and motions involving the Debtors or Reorganized Debtors that may be pending in the Bankruptcy Court on or initiated after the Confirmation Date;

(n)      Enforce all orders, judgments, injunctions, and rulings entered in connection with the Chapter 11 Cases;

(o)     Determine such other matters and such other purposes as the Confirmation Order may provide;

(p)     Issue such orders as may be necessary or appropriate to implement, execute, and consummate the Plans and all contracts, instruments, releases, and other agreements or documents created in connection with the Plans, the Disclosure Statement, or the Confirmation Order;

(q)     Hear and determine all disputes involving the existence, scope, nature or otherwise of the discharges, releases, injunctions and exculpations granted under the Plans, the Confirmation Order, or the Bankruptcy Code;

(r)     Issue injunctions and effect any other actions that may be necessary or appropriate to restrain interference by any person or entity with the consummation, implementation or enforcement of the Plan, the Confirmation Order, or any other Order of the Bankruptcy Court;

(s)     Hear and resolve any cases, controversies, suits, or disputes that may arise in connection with the consummation, implementation, enforcement or interpretation of the Plans, whether by the Debtors, the Reorganized Debtors, or otherwise, or any contract, instrument, release, or other agreement or document that is executed or created pursuant to the Plan or any entity's rights arising from or obligations incurred in connection with the Plan or such documents;

(t)     Modify the Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code or modify the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Plan, the Disclosure Statement, or the Confirmation Order, or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Plan, the Disclosure Statement, or the Confirmation Order, in such manner as may be necessary or appropriate to consummate the Plan;

(u)     Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation, implementation, or enforcement of the Plan or the Confirmation Order:

(v)     Hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code (including, without limitation, any request by the Debtors prior to the Effective Date or request by the Reorganized Debtors after the Effective Date for any expedited determination of tax under section 505(b) of the Bankruptcy Code);

(w)     Enter an order establishing Bar Dates in respect of any Claims for which Bar Dates have not been established as of the Confirmation Date;

(x)     Determine compromises and settlements of Claims against the Debtors or the estates;

(y)     Determine all questions and disputes regarding title to the assets of the Debtors, the estates, or the Reorganized Debtors;

(z)     Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason or in any respect modified, stayed, reversed, revoked, or vacated or distributions pursuant to the Plan are enjoined or stayed;

(aa)     Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Plan, the Disclosure Statement, or the Confirmation Order;

(bb)     Enter an order or final decree closing the Chapter 11 Cases; and

(cc)     Hear any other matter not inconsistent with the Bankruptcy Code.

29. <u>References to Plan Provisions</u>.  The failure to include or specifically reference any particular provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Plan be confirmed in its entirety.

30. <u>Exhibits</u>.  Each reference to a document or agreement that is in the form attached as an Exhibit or Schedule to the Plan or the Disclosure Statement in this Order, in the Findings and Conclusions, or in the Plan shall be deemed to be a reference to such document or agreement in substantially the form of the latest version of such document or agreement filed with the Court (whether filed as an attachment to the Plan or filed separately).

31. <u>Inconsistencies</u>.  The provisions of the Plan and of this Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; <u>provided</u>, <u>however</u>, that if there is determined to be any inconsistency between any Plan provision and any provision of this Confirmation

Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of this Confirmation Order shall govern and any such provision of this Confirmation Order shall be deemed a modification of the Plan and shall control and take precedence.

32. <u>Separate Confirmation Orders</u>.  This Confirmation Order is and shall be deemed a separate Confirmation Order with respect to each of the Debtors in each Debtor's separate Chapter 11 Cases for all purposes.  The Clerk of the Court is directed to file and docket this Confirmation Order in the Chapter 11 Case of each of the Debtors, notwithstanding any order authorizing administrative consolidation of the Chapter 11 Cases.

33. <u>Applicable Non-Bankruptcy Law</u>.  Pursuant to 11 U.S.C. §§ 1123(a) and 1142(a), the provisions of this Confirmation Order, the Plan, or any other amendments or modifications thereto shall apply and be enforceable notwithstanding any otherwise applicable non- bankruptcy law.

34. <u>Reversal</u>.  If any or all of the provisions of this Confirmation Order are hereafter reversed, modified, or vacated by subsequent order of the Court or any other court, in the absence of a stay of this Confirmation Order, such reversal, modification, or vacatur shall not affect the validity of the acts or obligations incurred or undertaken in good faith under or in connection with the Plan prior to the receipt of written notice of any such order by the Reorganized Debtors.  Notwithstanding any such reversal, modification, or vacatur of this Confirmation Order, in the absence of a stay of this Confirmation Order, any such act or obligation incurred or undertaken in good faith pursuant to, and in reliance on, this Confirmation Order prior to the effective date of such reversal, modification, or vacatur shall be governed in all respects by the provisions of this Confirmation Order and the Plan or any amendments or modifications thereto.

35. <u>References to the Plan or the Debtors</u>.  Unless otherwise specifically stated in this Confirmation Order or the Plan, any reference to the Plan shall be a reference to each of the individual Plans with respect to each of the respective Debtors. Similarly, unless otherwise stated in this Confirmation Order or the Plan, any reference to the Debtors in the plural shall constitute a reference to all of the respective Debtors as if individually set forth herein and the satisfaction of any requirement with respect to the Debtors shall constitute a satisfaction of such requirement as to each and every of the respective Debtors.

36. <u>Filing and Recording</u>.  This Confirmation Order (a) is and shall be effective as a determination that, on the Effective Date, (i) all Claims and Interests existing prior to such date have been released, discharged, and terminated to the extent provided herein or in the Plan (and documents executed in connection therewith) and (ii) all liens granted hereunder are valid, perfected and in full force and effect, and (b) is and shall be binding upon and shall govern the acts of all entities including all filing agents, filing

officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, clerks of court, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required, by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record, or release any document or instruments. Each and every federal, state, and local government agency is hereby directed to accept any and all documents and instruments necessary, useful, or appropriate (including Uniform Commercial Code financing statements) to effectuate, implement, and consummate the transactions contemplated by the Plan and this Confirmation Order without payment of any recording tax, stamp tax, transfer tax, or similar tax imposed by state or local law.

37.    <u>Priority Tax Claims</u>.  Except as otherwise provided herein or in the Plan, each holder of an Allowed Priority Tax Claim shall be paid in full, in Cash, in an amount equal to such Allowed Priority Tax Claim on the Effective Date, or as soon thereafter as is reasonably practicable, pursuant to section 1129(a)(9) of the Bankruptcy Code, unless otherwise agreed to by the holder of an Allowed Priority Tax Claim and the applicable Debtor.

38.    <u>Resolution of Fifth Third Bank Objection</u>.  On the record at the Confirmation Hearing, through counsel, Debtors announced the resolution of the Objection of Fifth Third Bank, which has been resolved as follows:

     i.    Notwithstanding anything in the Plan or herein to the contrary, (a) any claims of the Prepetition Agent or Prepetition Senior Lenders for indemnification under the Senior Credit Agreement (each, an "<u>Indemnification Claim</u>" and, collectively, the "<u>Indemnification Claims</u>") may be brought by the Prepetition Agent or Prepetition Senior Lenders, respectively, by motion before this Court at any time after the Effective Date, and the Reorganized Debtors shall have 30 days to respond thereto, and (b) any Indemnification Claim that is ultimately allowed by this Court will be promptly paid in full in cash by the Reorganized Debtors, not less than 14 days after entry of an order allowing the claim, whether from the Disputed Claims Reserve or otherwise.

     ii.    Nothing in the Plan or this Confirmation Order does or shall release, waive, impair or discharge the Indemnification Claims.

     iii.    Additionally, Debtors agree to supplement the Disputed Claims Reserve with $75,000.00 on account of Fifth Third's alleged indemnification claims.

39.    <u>SoundExchange Cure Amount Objection and Supplemental Language.</u>

i.    Nothing in the Plan or this Confirmation Order shall affect, modify, diminish, enhance, or impair the auditing payments and distribution rights, defenses, and obligations (collectively, the "Rights") of SoundExchange, the Debtors, the Reorganized Debtors or any third party as set forth in 37 C.F.R § 380.6 with respect to audits (the "Audit Claims") for the period beginning on or after January 1, 2016 (the "Audit Years") and (ii) the Audit Claims for audits of the Audit Years shall not be discharged, impaired, or affected in any way by the releases or discharge provisions set forth in the Plan or this Confirmation Order, and all such Audit Claims and Rights are expressly preserved.

ii.    Nothing in the Plan or this Confirmation Order shall release, waive or discharge any Released Parties from any Causes of Action related to or arising from royalty payments, minimum fees, late fees and any other amounts that accrued prior to the Effective Date (i) with respect to any station, channel, streaming platform or other services owned (in whole or in part), controlled (directly or indirectly), licensed to, managed by or operated by any Releasing Parties, for which the Releasing Parties would be liable to SoundExchange for such amounts and (ii) which station, channel, streaming platform or other service was at any time prior to the Effective Date making transmissions or ephemeral reproductions eligible for the statutory licenses set forth in sections 112 and 114 of the Copyright Act, 17 U.S.C. §§ 112(e) and 114 (d)(2) (the "Statutory Licenses").

iii.    The hearing on SoundExchange's Cure Amount Objection is adjourned at least thirty (30) days from entry of this Confirmation Order or such later date as agreed to by Debtors and SoundExchange; provided, however, that the Debtors shall give SoundExchange at least ten (10) days' notice of the scheduling of a hearing on SoundExchange's Cure Amount Objection.

41. Continued Authority of FCC.  No provision in the Plan or this Order relieves any Debtor or reorganized Debtor from its obligation to comply with the Communications Act of 1934, as amended, and the rules, regulations and orders promulgated thereunder by the Federal Communications Commission ("FCC").  No transfer of any FCC license or authorization held by a Debtor or transfer of control of a Debtor, or transfer of control of a FCC licensee controlled by a Debtor shall take place prior to the issuance of FCC regulatory approval for such transfer pursuant to applicable FCC regulations.  The FCC's rights and powers to take any action pursuant to its regulatory authority including, but not limited to, imposing any regulatory conditions on any of the above described transfers, are fully preserved, and nothing herein shall proscribe or constrain the FCC's exercise of such power or authority.

42. Waiver of Stay of Confirmation Order.  Notwithstanding Fed. R. Bankr. P. 3020(e), this Confirmation Order shall take effect immediately upon its entry and the Reorganized Debtors are authorized to consummate the Plan immediately after entry of this Confirmation Order, in accordance with the terms of the Plan, including, without limitation, the execution and prosecution by the Reorganized Debtors of an application for FCC approval.

DATED: March 1, 2019
St. Louis, Missouri 63102
mtc

CHARLES E. RENDLEN, III
U.S. Bankruptcy Judge

Order Prepared By:
Robert E. Eggmann
Carmody MacDonald, P.C.
120 South Central, Suite 1800
St. Louis, Missouri 63105
(314) 854-8600
(314) 854-8660

Copies to:

United States Trustee's Office
111 South Tenth Street, Suite 6353
St. Louis, MO 63102

Robert E. Eggmann
Attorney for Debtors
Carmody MacDonald P.C.
120 South Central Avenue, Suite 1800
St. Louis, MO 63105

MGTF Radio Company, LLC
7701 Forsyth, Suite 500
St. Louis, MO 63105

{15323/00016/2460779.DOCX.}

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | **Case No.:  18-41671-705** |
| | ) | **Honorable Charles E. Rendlen III** |
| **MGTF RADIO COMPANY, LLC, et al.,** | ) | **Chapter 11** |
| | ) | **Jointly Administered** |
| Debtors. | ) | |
| | ) | **Hearing Date: February 12, 2019** |
| | ) | **Hearing Time:  10:00 a.m.** |
| | ) | **Hearing Location: 7 South** |
| | ) | **St. Louis, Missouri** |
| | ) | |
| | ) | **Robert E. Eggmann, Esq.** |
| | ) | **Thomas H. Riske, Esq.** |
| | ) | **Carmody MacDonald P.C.** |
| | ) | **120 South Central, Suite 1800** |
| | ) | **St. Louis, Missouri 63105** |
| | ) | **(314) 854-8600** |
| | ) | **ree@carmodymacdonald.com** |
| | ) | **thr@carmodymacdonald.com** |

**FIRST AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF MGTF**
**RADIO COMPANY, LLC AND WPNT, INC. DATED NOVEMBER 13, 2018**

COME NOW MGTF Radio Company, LLC and WPNT, Inc. as Debtors and Debtors-in-Possession ("Debtors") and hereby file their First Amended Joint Chapter 11 Plan of Reorganization Dated November 13, 2018 for the Debtors' bankruptcy estates (the "Plan"). References made to the Disclosure Statement refer to that written Disclosure Statement approved by the Bankruptcy Court on December 28, 2018.  The Disclosure Statement provides a summary and analysis of this Plan.

**ARTICLE I**

Definitions

Capitalized items used in this Plan shall, unless otherwise defined herein, have the meanings or rules of construction as are assigned to each under the Bankruptcy Code.  Unless the context otherwise requires, the following terms used herein shall have the meaning specified hereinafter:

1.   **Additional Equity** shall mean contingent additional equity in each of the Reorganized Debtors distributed to the Holders of the Senior Secured Claims and the Holders of the Unsecured Mezzanine Loan Claims pursuant to the Equity Allocation Mechanism as provided for in the Plan Term Sheet.

2.   **Adequate Protection Claims** shall mean the Claims of the Holders of the Senior Secured Claims for adequate protection arising under the Final Cash Collateral Order, including, without limitation, any post-petition interest claims and fees and expenses.

3.   **Administrative Expense Claim** shall mean a Claim against Debtors for costs or expenses of administration of Debtors' Estate under Bankruptcy Code §§ 503(b) and 507(b), including, but not limited to the actual and necessary expenses incurred on or after the Petition Date of preserving Debtors' Estate and operating the business of Debtors, including, but not limited to, compensation and reimbursement awarded to professionals under Bankruptcy Code § 330.

4.   **Allowed** as used in reference to a Claim, shall mean any Claim, that: (a) was filed on or before the Bar Date or which, pursuant to the Bankruptcy Code or a Final Order is not required to be filed; (b) was or hereafter is scheduled by Debtors as both (x) liquidated, and (y) neither disputed nor contingent; or (c) is allowed pursuant to provisions of the Plan; *provided, however,* that with respect to any Claim described in clause (a), above, such claim shall be considered Allowed only if and to the extent that with respect to any such Claim no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court or such an objection is so interposed and the Claim shall have been Allowed for distribution purposes by a Final Order.  In no event shall a Claim be deemed Allowed if such Claim has been objected to or is objected to after entry of the Confirmation Order unless or until such Claim has been determined Allowed by a Final Order of the Bankruptcy Court.  Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no Proof of Claim has been timely filed, is not considered Allowed and shall be expunged without further action by the Debtors or the Reorganized Debtors and without any further notice to or action, order or approval of the Bankruptcy Court.  Unless otherwise specified, no Allowed Claim shall include interest on the principal amount of such Claim from and after the Petition Date, late fees, attorneys' fees, Court costs or other costs, or other charges.

5.   **Assumed Executory Contracts and Unexpired Leases Schedule** shall have the meaning set forth in section 6.01 of this Plan.

6.   **Avoidance Actions** shall mean any and all Claims and Causes of Action which any of the Debtors, the Estates, or any other appropriate party in interest has asserted or may assert under chapter 5 of the Bankruptcy Code or under similar or related state or federal statues and common law, including fraudulent transfer and/or preference laws.

7.   **Bankruptcy Code** shall mean §§ 101-1532 of Title 11 of the United States Code.

8.   **Bankruptcy Court** shall mean the United States Bankruptcy Court for the Eastern District of Missouri, in which the Chapter 11 Cases are pending.

9.     **Bankruptcy Rules** shall mean the Federal Rules of Bankruptcy Procedure promulgated under section 2075 of the Judicial Code and the general, local, and chambers rules of the Bankruptcy Court.

10.     **Bar Date** shall mean the deadlines established for the filing of Claims in the Chapter 11 Cases pursuant to an Order of the Bankruptcy Court, the Bankruptcy Code, or applicable law.

11.     **BDCA** shall mean Business Development Corporation of America, which, as of the date hereof, is the sole Lender under the Senior Credit Agreement and the Subordinated Credit Agreement**.**

12.     **BSP Agency** shall mean BSP Agency, LLC, which serves as administrative agent under the Senior Credit Agreement and the Subordinated Credit Agreement**.**

13.     **Business Day** shall mean a day other than a Saturday, Sunday, federal holiday, or other day on which banks are authorized or required to close in the State of Missouri.

14.     **Cash** shall mean the legal currency of the United States and equivalents thereof.

15.     **Cause of Action** shall mean any action, claim, cause of action, controversy, demand, right, action, lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertible directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law, including, without limitation, against the Prepetition Agent and the Prior Senior Lenders.

16.     **Chapter 11** shall mean Chapter 11 of the Bankruptcy Code.

17.     **Chapter 11 Cases** shall mean these certain Chapter 11 bankruptcy cases captioned *In re MGTF Radio Company, LLC and WPNT, Inc.* presently pending before the Bankruptcy Court as case numbers 18-41671-705 and 18-41672-705, respectively.

18.     **Claim** shall mean any claim against the Debtors, as defined in section 101(5) of the Bankruptcy Code, including: (a) any right to payment from Debtors, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, unsecured, pre-petition, or postpetition; or (b) any right to an equitable remedy for breach of performance if such breach gives rise to a right to payment from Debtors, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

19.     **Claimant** shall mean any Person who has a Claim against Debtors.

20.     **Class** shall mean Class 1, 2, 3, 4, 5, 6, and 7 as described in Article **IV** of this Plan.

21.     **Communications Laws** shall mean, collectively, the Communications Act of 1934, as amended, and the rules and published policies of the FCC promulgated thereunder.

22.     **Confirmation Date** shall mean the date on which the Confirmation Order is entered by the Clerk of the Bankruptcy Court on the docket for the Chapter 11 Cases.

23.     **Confirmation Order** shall mean the Final Order entered by the Bankruptcy Court confirming the Plan pursuant to Bankruptcy Code § 1129.

24.     **Consent** shall mean consent to take any action, which shall not be unreasonably withheld, delayed or conditioned.

25.     **Court** shall mean (a) the Bankruptcy Court, (b) any Court having jurisdiction to hear appeals or certiorari proceedings therefrom, and (c) any other federal or state Court having jurisdiction over matters addressed in or related to this Plan.

26.     **Creditor** shall mean a Person that held a Claim against Debtors that arose on or before the Petition Date or a Claim against the Estate of any kind specified in Bankruptcy Code §§ 502(g), 502(h), or 502(i).

27.     **Debtors** shall mean collectively MGTF Radio Company, LLC and WPNT, Inc., each individually a "Debtor".

28.     **Disclosure Statement** shall mean the disclosure statement submitted by Debtors contemporaneously herewith concerning the Plan, as may be amended or modified from time to time and as approved by the Bankruptcy Court pursuant to Bankruptcy Code § 1125(b).

29.     **Disputed Claim** shall mean a Claim against Debtors that is not an Allowed Claim and as to which there is no Final Order disallowing such Claim.

30.     **Disputed Claim Reserve** shall have the meaning ascribed to it in Section 5.12 of the Plan.

31.     **Distribution** shall mean the Cash and other consideration distributed by Debtors under the Plan from time to time.

32.     **Effective Date** shall mean the first Business Day following the day that all Conditions to Effective Date have been satisfied or waived as set forth in Sections 7.11 and 7.12 hereof.

33.     **Equity Distribution** shall mean 100% of the New Equity issued on the Effective Date to be allocated to the Holders of Senior Secured Claims and the Holders of Unsecured Mezzanine Loan Claims, as provided for in the Plan Term Sheet.

34.     **Equity Allocation Mechanism** shall mean the methodology for the (a) allocation of the New Equity to and among the Holders of Senior Secured Claims and the Holders of Unsecured Mezzanine Loan Claims, and (b) distribution of Additional Equity to Holders of Senior Secured Claims and Holders of Unsecured Mezzanine Loan Claims, in each case as provided for in the Plan Term Sheet, and included in the Plan

Supplement, which is designed to ensure compliance with the Communications Laws, including the Communications Laws relating to attribution and ownership.

35. **Estates** shall mean the estates created upon the commencement of the Chapter 11 Cases pursuant to Bankruptcy Code § 541(a).

36. **Estate Property** shall mean all of the property of the Estates.

37. **Executory Contract** shall mean a contract to which one or more of the Debtors is a party that is subject to assumption or rejection under § 365 of the Bankruptcy Code.

38. **Existing Equity Holders** shall mean the holders of Existing Equity Interests.

39. **Existing Equity Holders Undertaking** shall mean an undertaking made by the Existing Equity Holders for the benefit of BSP Agency, LLC and Business Development Corporation of America and their respective successors and assigns, included in the Plan Supplement.

40. **Existing Equity Interest** shall mean all equity interests, including common stock, member interests, preferred stock and any options, warrants, profit interest units, or rights to acquire any equity interests in the Debtors.

41. **FCC** shall mean the Federal Communications Commission and any successor governmental agency performing functions similar to those performed by the Federal Communications Commission on the Effective Date.

42. **FCC Applications** shall mean collectively, each application, petition, or other request filed with the FCC in connection with this restructuring and the Plan, including without limitation the FCC Long Form Applications and, if deemed necessary, the Petition for Declaratory Ruling.

43. **FCC Approval** shall mean the consent or approval by the FCC, or its staff acting under delegated authority, to any FCC Application.

44. **FCC Licenses and Assets** means the broadcasting and other licenses, authorizations, waivers and permits of the Debtors and any of their subsidiaries, including, without limitation, MGTF Media Company, LLC, and WPNT Media Subsidiary, LLC, that are issued from time to time by the FCC to any of the foregoing, together with any assets related thereto.

45. **FCC Long Form** Applications shall mean collectively, each application filed with the FCC on FCC Form 314 or FCC Form 315 in connection with this restructuring and the Plan seeking FCC consent to the transfer of control of MGTF Media Company, LLC, and WPNT Media Subsidiary, LLC or any Debtor or the assignment of any of the FCC Licenses and Assets. **Final Cash Collateral Order** shall mean the Final Order Pursuant to 11 U.S.C. §§ 361 and 363 (I) Authorizing the Debtors (A) to Utilize Cash Collateral and (II) Granting Adequate Protection, dated April 25, 2018 (ECF No. 74).

46. **Final Order** shall mean an order or judgment of a Court, as entered by the clerk of such Court on a docket related to the Chapter 11 Cases, as to which; (a) the time for any

appeal or petition for review has expired and no appeal or petition for review is pending or timely was filed, or (b) any appeal or petition for review finally has been determined or dismissed.

47. **General Unsecured Claim** shall mean a Claim other than (a) a Secured Claim, (b) an Administrative Expense Claim, (c) a Priority Non-Tax Claim, (d) a Priority Tax Claim, (e) an Unsecured Mezzanine Loan Claim or (f) an Intercompany Claim.

48. **Governmental Unit** shall have the meaning ascribed in Bankruptcy Code § 101(27).

49. **Impaired** shall have the meaning ascribed to it in Article VIII of the Plan.

50. **Initial Debt Paydown Date** shall have the meaning ascribed to it in the Plan.

51. **Intercompany Claim** shall mean any Claim held by a Debtor against another Debtor.

52. **Lender Equity** shall mean the New Equity and the Additional Equity, whenever issued.

53. **Lenders** shall mean, collectively, the Holders of the Senior Secured Claims and the Unsecured Mezzanine Loan Claims.  As of the date hereof, BDCA is the sole Holder of the Senior Secured Claims and the Unsecured Mezzanine Loan Claims.

54. **MGTF** shall mean MGTF Radio Company, LLC.

55. **New Equity** shall mean collectively any and all classes of new equity, including without limitation shares of stock or limited liability company member interests, issued by the Reorganized Debtors on the Effective Date.

56. **New Holdcos** shall mean MGTF Holdco, LLC, and WPNT Holdco, Inc., which are the newly formed holding corporations, to be owned by Existing Equity Holders.

57. **New Term Loan** shall mean that certain first-priority senior secured term loan to Reorganized Debtors and the New Holdcos in an initial principal amount of $62,700,000.00 (which amount may be reduced without penalty if excess cash is applied to pay down the New Term Loan indebtedness in connection with the Effective Date), with a 5-year term and an interest rate of LIBOR+600 (and a LIBOR floor of 1%) and all other documents entered into in connection therewith or contemplated thereby, substantially in the form included in the Plan Supplement, which shall be in form and substance satisfactory to the New Term Loan Agent and consistent with the Plan Term Sheet.  In the event LIBOR ceases to be a recognized standard for commercial loans, the interest rate applicable to the New Term Loan shall be converted to a generally accepted reference rate in effect at the time providing an interest rate comparable to: LIBOR+600 (with a LIBOR floor of 1%).

58. **New Term Loan Agent** shall mean the agent under the New Term Loan Agreement, which as of the Effective Date shall be BSP Agency.

59. **New Term Loan Agreement** shall mean, that certain loan agreement, dated as of the Effective Date, governing the New Term Loan, substantially in the form included in the

Plan Supplement, which shall be in form and substance satisfactory to the New Term Loan Agent and consistent with the Plan Term Sheet.

60. **New Term Loan Lenders** shall mean the lenders under the New Term Loan Agreement.

61. **Other Secured Claim** shall mean any Secured Claim that is not a Senior Claim.

62. **Outside Debt Paydown Date** shall have the meaning ascribed to it in Section 5.12 of the Plan.

63. **Ownership Certifications** shall mean the written certification(s) which shall be sufficient to enable the Debtors or the Reorganized Debtors, as applicable, with the Consent of the Senior Agent or the New Term Loan Agent, as applicable, to determine (x) the extent to which direct and indirect voting and equity interests of the certifying party are held by non-U.S. Persons, as determined under the Communications Laws, and (y) whether the holding of equity of the Reorganized Debtors by the certifying party would result in a violation of the Communications Laws or be inconsistent with any FCC Approval.

64. **Person** shall mean an individual, corporation, limited liability company, limited or general partnership, joint stock company, joint venture, trust, estate, incorporated association or organization, and/or other entity, but does not include a Governmental Unit other than as stated in Bankruptcy Code § 101(41)(A-C).

65. **Petition Date** shall mean March 20, 2018, the date upon which the Debtors filed the Chapter 11 Cases with the Bankruptcy Court**.**

66. **Petition for Declaratory Ruling** shall mean a petition filed with the FCC, requesting FCC approval to the holding of equity in the Reorganized Debtors by one or more non-U.S. Persons.

67. **Plan** shall mean this First Amended Joint Chapter 11 Plan of Reorganization for MGTF Radio Company, LLC and WPNT, Inc. dated November 13, 2018, in its present form and as it may be further amended or modified from time to time in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the provisions contained herein.

68. **Plan Supplement** shall mean the compilation of documents and forms of documents, schedules, and exhibits to the Plan to be filed by the Debtors no later than 10 days before the Voting Deadline or such later date on notice to parties in interest, as it may thereafter be altered, amended, modified, or supplemented from time to time in accordance with the terms hereof and in accordance with the Bankruptcy Code and the Bankruptcy Rules and additional documents filed with the Bankruptcy Court prior to the Effective Date.

69. **Plan Term Sheet** shall mean that certain term sheet detailing the material terms of the Debtors' restructuring as agreed to among the Debtors, BSP Agency, BDCA, and the Existing Equity Holders on September 13, 2018.

70.  **Potential Claims** shall have the meaning ascribed to such term in Section 5.11 of the Plan.

71.  **Prepetition Agent** shall mean Fifth Third Bank, the administrative agent under the Senior Credit Agreement prior to the appointment of the Senior Agent as administrative agent thereunder.

72.  **Prior Senior Lenders** shall mean the holders of debt evidenced by the Senior Credit Agreement prior to the assignment of their interests under the Senior Credit Agreement to Business Development Corporation of America, on or about March 22, 2018.

73.  **Priority Non-Tax Claim** shall mean a Claim that arises under Bankruptcy Code § 507(a), other than an Administrative Expense Claim or a Priority Tax Claim.

74.  **Priority Tax Claim** shall mean a Claim of a Governmental Unit against Debtors of the kind entitled to priority under Bankruptcy Code § 507(a)(8), including, to the extent entitled to priority under Bankruptcy Code § 507(a)(8), those Claims that are assessed post-Effective Date for the prepetition period.

75.  **Proof of Claim** shall mean a Claim asserted by a Claimant in writing and filed with the Bankruptcy Court.

76.  **Pro Rata** shall mean the proportion that an Allowed Claim in a Class bears to the aggregate amount of all Allowed Claims in such Class. To the extent that one or more Disputed Claims exists in such Class, pro *rata* shall mean the same proportion that an Allowed Claim in a particular Class bears to the aggregate amount of the sum of all Allowed Claims and all Disputed Claims in such Class until all such Disputed Claims become Allowed Claims or are disallowed or withdrawn.

77.  **Projections** shall mean the financial information set forth in Exhibit B to the Disclosure Statement.

78.  **Released Parties** shall mean (i) the Debtors, (ii) BSP Agency, (iii) the present and former members, directors, officers and employees of the Debtors who were serving in such capacity on or after the Petition Date, (iv) BDCA, (v) any attorneys, financial advisors, investment bankers, accountants, consultants, or other professionals of the parties described in clauses (i) through (iv) hereof; *provided, however*, that such attorneys and professional advisors shall only include those that provided services related to any of the Debtors, BSP Agency and/or its affiliates, BDCA and/or its affiliates, the Chapter 11 Cases, the Disclosure Statement, this Plan and all financing and other transactions contemplated by this Plan, (vi) any affiliates, successors, and assigns of the parties described in clauses (i) through (v) hereof, and (vii) the present and former officers, directors, employees, agents, representatives, advisors, members, and shareholders of each of the parties described in clauses (i) through (v) hereof; *for the avoidance of doubt*, the Prepetition Agent and Prior Senior Lenders, in each case, in such capacities, are not Released Parties, as defined herein.

79.  **Retained Professional shall mean any professional** engaged in the Chapter 11 Cases under § 327 of the Bankruptcy Code**.**

80.     **Reorganized Debtors** shall mean Debtors as they will exist on and after the Effective Date of the Plan, including any successor thereto, by merger, consolidation or otherwise, on or after the Effective Date.

81.     **Schedules** shall mean the schedules of assets and liabilities and the statement of financial affairs filed by Debtors pursuant to Bankruptcy Code § 521 and Bankruptcy Rules 1007 and 1009, including all amendments and supplements thereto as of the Confirmation Date.

82.     **Secured Claim** shall mean a Claim as to which the Claimant has purported to assert a validly perfected and enforceable lien or security interest pursuant to Bankruptcy Code §§ 101 (37) and (51) and that is secured in whole or in part by Estate Property.  A Secured Claim shall only be such a Claim in an amount that does not exceed the value of the Estate Property securing such Claim, and to the extent of the value of the lien, encumbrance or security interest of the holder of such Claim in such Estate Property, as determined in accordance with Bankruptcy Code § 506, exceeds the value of the Estate Property subject to such Claim, such Secured Claim shall be treated as an Unsecured Claim except to the extent such Creditor is entitled to make an election to receive the treatment set forth in Bankruptcy Code § 1111(b)(2) and the Creditor so elects.  As used herein, the term Secured Claim includes Senior Secured Claims and Other Secured Claims.

83.     **Senior Agent** shall mean BSP Agency, LLC.

84.     **Senior Credit Agreement** shall mean that certain Credit Agreement dated September 29, 2014, among Debtors, as borrowers, Fifth Third Bank, as administrative agent, and certain financial institutions and lender parties thereto, and any schedules, amendments, guarantees, security documents and other documents in connection therewith.

85.     **Senior Secured Claims** shall mean Claims arising under the Senior Credit Agreement.

86.     **Subordinated Credit Agreement** shall mean that certain Subordinated Credit Agreement dated September 29, 2014, among Debtors, as borrowers, Business Development Corporation of America, as administrative agent, and certain financial institutions and lender parties thereto, and any schedules, amendments, guarantees, security documents and other documents in connection therewith.

87.     **Unexpired Lease** shall mean a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under § 365 of the Bankruptcy Code.

88.     **Unsecured Claim** shall mean a Claim other than (a) a Secured Claim, (b) an Administrative Expense Claim, (c) a Priority Non-Tax Claim, and (d) a Priority Tax Claim.

89.     **Unsecured Mezzanine Loan Claim** shall mean a Claim arising under the Subordinated Credit Agreement.

90.     **Voting Deadline** shall mean the date established by the Bankruptcy Court for voting to accept or reject the Plan.

91.     **WPNT** shall mean WPNT, Inc.

## ARTICLE II

Unclassified Allowed Claims and Their Treatment

In accordance with §§ 1123(a)(1) and 1129(a)(12) of the Bankruptcy Code, Allowed Claims of the kind described in §§ 507(a)(1), 507(a)(2), and 507(a)(8) of the Bankruptcy Code are unclassified under the Plan and are treated in the manner set forth below.

2.01    Title 28 U.S.C. § 1930 Fees.  All fees to be paid in the Chapter 11 Cases, pursuant to 28 U.S.C. § 1930, as determined by the Bankruptcy Court at the hearing on the confirmation of the Plan or thereafter, shall, if not previously paid in full, be paid in cash on the Effective Date.   All post-confirmation reports and fees (to be filed by Retained Professionals) as required by law shall be filed and paid by the Reorganized Debtors.

2.02    Allowed Administrative Claims.   As required by the Bankruptcy Code, Allowed Administrative Claims are not classified under the Plan.  The holder of an Allowed Claim with respect to liabilities incurred by the Debtors in the ordinary course of business during the Chapter 11 Cases or assumed by the Debtors prior to the Effective Date, including, but not limited to, an Allowed Claim entitled to payment under § 503(b) of the Bankruptcy Code, shall be paid in cash on the Effective Date or the obligations under any agreements shall be performed in the ordinary course of business in accordance with the terms and conditions of any such controlling agreements, course of dealing, course of business, or industry practice.

The Bankruptcy Court must approve the Administrative Expense Claims of all Retained Professionals.  Each Retained Professional must file and serve a properly-noticed fee application pursuant to §§ 330 and 331 of the Bankruptcy Code, or § 328 to the extent so approved by the Bankruptcy Court, and the Bankruptcy Court must enter a Final Order on the

application before any Administrative Expense Claim thereunder is paid.  Only the amount of fees and expenses allowed by the Bankruptcy Court will be paid under this Plan.

**ALL APPLICATIONS FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE CLAIMS AND EXPENSES EXCEPT FOR THOSE HELD BY RETAINED PROFESSIONALS MUST BE FILED WITHIN SIXTY (60) DAYS AFTER THE CONFIRMATION DATE, OR ANY SUCH CLAIM SHALL BE FOREVER BARRED.**

The Administrative Expense Claims outstanding on the Effective Date will consist of fees and expenses of professionals for post-filing work, any post-petition taxes, and other administrative claims.

2.03   <u>Allowed Priority Tax Claims.</u>  Each holder of an Allowed Claim of the kind described in § 507(a)(8) of the Bankruptcy Code shall receive equal quarterly payments in an amount which will result in full payment of its Allowed Claim within five (5) years of the entry of the Petition Date.  Allowed Priority Tax Claims will include any penalties allowed by Final Order and interest at the rate of four percent (4%) per annum, or such other Interest Rate as may be applicable and allowed by law.  The Debtors' submit that the Allowed Priority Tax Claims consist of the following:

| Creditor | Type of Tax | Amount |
|---|---|---|
| Internal Revenue Service | WPNT Income | $100.00 |

**ARTICLE III**

<u>Classification of Allowed Claims and Allowed Interests</u>

This Plan constitutes a separate Chapter 11 plan of reorganization for each Debtor and, accordingly, the classifications set forth in Classes 1 to 7 shall be deemed to apply to each of the Debtors.

3.01    Inclusion in Classes.  All Allowed Claims and Allowed Interests, other than Allowed Claims treated under Article Two of the Plan, are placed in the following Classes.

3.02    Class 1 Allowed Priority Non-Tax Claims:  Class 1 shall consist of the Allowed Priority Non-Tax Claims. Class 1 is not impaired under the Plan.

3.03    Class 2 Allowed Senior Secured Claims:  Class 2 shall consist of the Allowed Senior Secured Claims.  Class 2 is impaired under the Plan.

3.04    Class 3 Allowed Other Secured Claims.  Class 3 shall consist of the Allowed Other Secured Claims.  Class 3 is not impaired under the Plan.

3.05    Class 4 Allowed Unsecured Mezzanine Loan Claims.  Class 4 shall consist of the Allowed Unsecured Mezzanine Loan Claims.  Class 4 is impaired under the Plan.

3.06    Class 5 Allowed Other General Unsecured Claims.  Class 5 shall consist of all Allowed Other General Unsecured Claims.  Class 5 is not impaired under the Plan.

3.07    Class 6 Allowed Intercompany Claims.  Class 6 shall consist of all Allowed Intercompany Claims.  Class 6 is unimpaired under the Plan.

3.08    Class 7 Allowed Existing Equity Interests.  Class 7 consists of all Allowed Existing Equity Interests in the Debtors.  Class 7 is impaired under the Plan.

**ARTICLE IV**

Treatment of Classified Allowed Claims and Interests

4.01    Plan Treatment Summary.  The Plan divides Allowed Claims and Allowed Interests against the Debtors into various Classes, which the Debtors believe are in accordance

with the Classification requirements of the Bankruptcy Code. The terms "Allowed" and "Claim" are defined in Article I of the Plan. Distributions to the holders of Allowed Claims under the Plan are in full satisfaction of those Allowed Claims (including any interest accrued and allowable thereon). The treatment of classified Allowed Claims and Allowed Interests under the Plan is set forth below.

4.02 <u>Class 1 Allowed Priority Non-Tax Claims</u>  Debtors' employees and independent contractors were paid prior to the filing and do not hold Priority Claims. The Debtors are not aware of any unpaid Class 1 Claims. In the event that any Priority Non-Tax Claims are filed and Allowed in the Chapter 11 Cases and remain unpaid on the Effective Date, such Claims will be treated as provided herein.

(a) <u>Treatment</u>: Except to the extent that a holder of an Allowed Priority Non-Tax Claim agrees to less favorable treatment on account of such Claim and/or to the extent that such Priority Non-Tax Claim has been paid in full on or before the Effective Date, the holder of such Allowed Priority Non-Tax Claim shall receive Cash in an amount equal to such Claim on the Effective Date.

Debtors estimate that the distribution on account of Class 1 Priority Non-Tax Claims is $0.00.

(b) <u>Voting</u>: The Allowed Priority Non-Tax Claims are not Impaired, and the holders of such Claims, if any, are not entitled to vote to accept or reject the Plan on account of such Claim.

4.03    Class 2 Allowed Senior Secured Claims.

(a)    Treatment: The Senior Secured Claims shall be Allowed and deemed to be Allowed Claims in the aggregate amount of $37,995,536.61, plus all unpaid accrued interest, fees and other charges owing under the Senior Credit Agreement to the extent not already reflected in the foregoing figure and to the extent the Debtors make a payment in respect of the Senior Credit Agreement from excess cash prior to the Effective Date.  The Holders of the Senior Secured Claims will retain all adequate protection payments in full and final satisfaction of any and all Adequate Protection Claims, and, on or as soon as practicable after the Effective Date, in full and final satisfaction, settlement, release and discharge of each Senior Secured Claim, will receive: (a) a Pro Rata Share of the New Term Loan; (b) New Equity in accordance with the Equity Allocation Mechanism as provided for in the Plan Term Sheet; (c) Additional Equity in accordance with the Equity Allocation Mechanism as provided for in the Plan Term Sheet; and (d) a Cash Distribution equal to the amount of: (i) accrued and unpaid interest under the Senior Credit Agreement; (ii) unpaid amounts in respect of hedging obligations and interest thereon under the Senior Credit Agreement; and (iii) accrued and unpaid fees and expenses.  Any Adequate Protection Claims which are outstanding as of the Effective Date shall be paid in cash on the Effective Date.

(b)    Voting: Senior Secured Claims are Impaired, and the Holders thereof are entitled to vote on the Plan.

4.04    Class 3 Allowed Other Secured Claims.

(a)    Treatment: Except to the extent that a Holder of an Other Secured Claim

agrees to a less favorable treatment, in exchange for full and final

satisfaction, settlement, release and discharge of each Allowed Other

Secured Claim, each holder of such Allowed Other Secured Claim shall

receive one of the following treatments, in the sole discretion of the

applicable Debtor: (i) the Debtors or the Reorganized Debtors shall pay

such Allowed Other Secured Claims in full in Cash, including the

payment of any interest required to be paid under section 506(b) of the

Bankruptcy Code; (ii) the Allowed Other Secured Claim will be

reinstated pursuant to section 1124 of the Bankruptcy Code; or (iii) the

Other Secured Claims shall retain their liens securing their Claims and

the Debtors and the Reorganized Debtors shall make Distributions to

the Holders of the Other Secured Claims pursuant to section 1129(b)(2)

of the Bankruptcy Code.

(b)    Voting:  All Other Allowed Secured Claims are not Impaired, and the

Holders thereof are not entitled to vote on the Plan.

4.05    Class 4 Allowed Unsecured Mezzanine Loan Claims.

(a)    Treatment: The Allowed Unsecured Mezzanine Loan Claims shall be

Allowed and deemed to be Allowed Claims in the aggregate amount of

$24,717,429.53, plus prepetition interest, fees and other charges owing under the Subordinated Credit Agreement to the extent not already reflected in the foregoing figure. In exchange for full and final satisfaction, settlement, release and discharge of each Allowed Unsecured Mezzanine Loan Claim, the Holders of Allowed Unsecured Mezzanine Loan Claims will receive: (a) a Pro Rata share of the New Term Loan; (b) New Equity in accordance with the Equity Allocation Mechanism as provided for in the Plan Term Sheet; and (c) Additional Equity in accordance with the Equity Allocation Mechanism, as provided for in the Plan Term Sheet.

(b)      <u>Voting</u>:  All Allowed Unsecured Mezzanine Loan Claims are Impaired, and the Holders thereof are entitled to vote on the Plan.


4.05   <u>Class 5 Allowed General Unsecured Claims.</u>

(a)      <u>Treatment</u>: General Unsecured Claims are not secured by Estate Property and are not entitled to priority under Bankruptcy Code § 507(a). The holders of Other Allowed General Unsecured Claims shall receive Cash in an amount equal to such Claim on the Effective Date or within thirty (30) days of such claim becoming an Other Allowed General Unsecured Claims if such allowance occurs after the effective date.

(b)      <u>Voting</u>:  Allowed Other General Unsecured Claims are not Impaired and each Holder thereof is not entitled to vote on the Plan.

4.06    Class 6 Allowed Intercompany Claims.

(a)    <u>Treatment:</u>  Class 6 consists of all Allowed Intercompany Claims in the Debtors.  Class 6 claimants will not receive any distribution under the Plan. Upon the Effective Date, all Intercompany Claims will be reinstated in full. Notwithstanding the foregoing, on and after the Effective Date, the Reorganized Debtors shall be entitled, with the Consent of the New Term Loan Agent, to transfer funds and obligations between and among themselves, and to release Intercompany Claims, as they determine to be necessary or appropriate to best enable the Reorganized Debtors to satisfy their obligations under the Plan.

(b)    <u>Voting</u>:  Class 6 Claims are not Impaired and the holders thereof are not entitled to vote under the Plan.

4.07    Class 7 Allowed Existing Equity Interests.

(a)    <u>Treatment:</u>  Class 7 consists of all Allowed Existing Equity Interests in the Debtors.  Upon the Effective Date, the existing stock of the Debtors shall be transferred to the New Holdcos in accordance, and to implement the transactions contemplated by, the Plan Term Sheet.  On or as soon as practicable after the Effective Date, the Holders of Allowed Existing Equity Interests shall retain 100% of the equity in the respective New Holdcos, and an indirect 67% equity interest in the Reorganized Debtors, in accordance with the Equity Allocation Mechanism, as provided for in the Plan Term Sheet.

(b)    <u>Voting:</u>  Class 7 is Impaired and entitled to vote under the Plan.

# ARTICLE V

## Means for Implementation of the Plan

5.01    <u>Revesting of Property of the Estate</u>.  On the Effective Date, all Estate Property, including Causes of Action and Avoidance Actions, will vest in the Reorganized Debtors and shall be free and clear of all claims and interests of Creditors and parties in interest, except as expressly provided in this Plan or the Confirmation Order.  On and after the Effective Date, except as provided for in the Plan, and subject to the Communications Laws, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests or Causes of Action without supervision or approval by the Bankruptcy Court.

5.02    <u>Source of Funding of Plan Distributions</u>.  All consideration necessary for the Reorganized Debtors to make payments or distributions under this Plan shall be obtained from the New Term Loan, New Equity, and from Cash on hand (including Cash from business operations).  Further, the Debtors and the Reorganized Debtors shall be entitled to transfer funds, other assets and liabilities between and among themselves as they determine to be necessary or appropriate to enable the Reorganized Debtors to satisfy their obligations under the Plan.  Except as set forth herein, any changes to intercompany account balances resulting from such transfers will be accounted for and settled in accordance with the Debtors' historical intercompany account settlement practices and will not violate the terms of the Plan.

5.03    <u>Corporate Existence</u>.  **Except as otherwise provided herein, each Debtor shall continue to exist as a Reorganized Debtor after the Effective Date as a separate**

corporate entity, limited liability company, or other form, as the case may be, with all the powers of a corporation, limited liability company, or other form, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and bylaws (or other formation documents) in effect on the Effective Date, except to the extent such certificate of incorporation and bylaws (or other formation documents) are amended by the Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval (other than any requisite filings required under applicable state law).

5.04    Reorganization Transfer and New Equity.  On the Effective Date, all Existing Equity Interests (including common stock, preferred stock, and any options, warrants, profit interest units, or rights to acquire any equity interests) in Debtor WPNT shall be transferred to a newly formed holding company, owned by the Existing Equity Holders ("WPNT Holdco, Inc.").  WPNT Holdco, Inc. shall establish a new wholly-owned limited liability corporation ("WPNT, LLC").  Debtor WPNT shall merge into WPNT, LLC with WPNT, LLC surviving ("Reorganized Debtor WPNT").  Pursuant to the Plan, New Equity in Reorganized Debtor WPNT shall be issued and allocated in accordance with the Equity Allocation Mechanism and the Plan Term Sheet.

Debtor MGTF shall maintain its existing corporate and organizational structure but shall, on or promptly after the Effective Date, elect to be treated as a partnership for federal tax purposes ("Reorganized Debtor MGTF" and, together with Reorganized Debtor WPNT, the "Reorganized Debtors").  Pursuant to the Plan, on the Effective Date, all Existing Equity Interests (including common stock, preferred stock, and any options, warrants, profit interest

units, or rights to acquire any equity interests) in Debtor MGTF, Inc. shall be transferred to a newly formed holding company, owned by the Existing Equity Holders ("MGTF Holdco, LLC").  New Equity in Reorganized Debtor MGTF shall be issued and allocated in accordance with the Equity Allocation Mechanism and the Plan Term Sheet.

Entry of the Confirmation Order shall be deemed approval of the Equity Distribution (including the transactions contemplated thereby, any amendments thereto, and all actions to be taken, undertakings to be made and obligations to be incurred by the Reorganized Debtors, the New Holdcos, and the Existing Equity Holders in connection therewith, whether before or after the Effective Date) and authorization for the Reorganized Debtors to issue the New Equity and, if applicable, the Additional Equity, subject to such modifications as the Reorganized Debtors may deem to be reasonably necessary or advisable in furtherance of the Plan.

Pursuant to section 1145 of the Bankruptcy Code, the issuance of the New Equity by the Reorganized Debtors as contemplated by this Plan is exempt from, among other things, the registration requirements of Section 5 of the Securities Act and any other applicable U.S. state or local law requiring registration prior to the offering, issuance, distribution or sale of New Equity.  The transfer of the New Equity may be restricted by the Communications Laws, including with respect to limitations set forth in Section 5.05 below, the organizational documents for the Reorganized Debtors, the New Term Loan Agreement, and the terms thereof.

5.05    FCC Licenses.  The required FCC Applications shall be filed by the Debtors as promptly as practicable, including the FCC Long Form Applications and, to the extent deemed necessary by the Debtors, Reorganized Debtors and Senior Agent, the Petition for Declaratory Ruling.  After such filings are made, any Person who thereafter acquires a Senior Secured

Claim or Unsecured Mezzanine Loan Claim may, to the extent deemed necessary by the Debtors, Reorganized Debtors and Senior Agent, be issued special warrants in lieu of, and providing the economic equivalent of, any New Equity that would otherwise be issued to such Person under the Plan, provided that the issuance of such special warrants is in compliance with the Communications Laws. In addition, the Debtors may, with the Consent of the Senior Agent, request that the Bankruptcy Court implement restrictions on trading of Claims and Interests that might adversely affect the FCC Approval process. To the extent that the Debtors, Reorganized Debtors and Senior Agent, deem it necessary to file a Petition for Declaratory Ruling, the Debtors shall request that the FCC process the FCC Long Form Applications separate and apart from the Petition for Declaratory Ruling. Regardless of whether the FCC consents to the request for separate processing, the Debtors shall diligently prosecute the FCC Applications and shall promptly provide such additional documents or information reasonably requested by the FCC in connection with its review of the FCC Applications. In the event FCC Approval of either or both of the FCC Long Form Applications is obtained while any such Petition for Declaratory Ruling remains pending, the Debtors (or Reorganized Debtors, as applicable) shall continue to diligently prosecute the Petition for Declaratory Ruling.

Notwithstanding anything else herein, nothing in this Plan shall (i) permit any Holder other than Existing Equity Holders (including through the New Holdcos) or affiliates of the Senior Agent to hold equity interests in either of the Debtors on or after the Effective Date unless the Debtors or the Reorganized Debtors, as applicable, with the Consent of the Senior Agent or the New Term Loan Agent, as applicable, shall have determined that such ownership will not cause a violation of any Communications Laws or be inconsistent with the FCC Approval to any FCC Long Form Application, or (ii) cause the Reorganized Debtors to exceed

FCC restrictions on alien ownership prior to the issuance of any requested Declaratory Ruling. Any distribution in contravention of the preceding sentence shall be adjusted to the minimum extent necessary to comply with those limitations.

5.06    Risk Factors.  The primary risks under the Plan are that the income from Reorganized Debtors' business operations will not meet current projections and will be insufficient to fund the Reorganized Debtors' and New Holdcos' obligations under the Plan. In such event, Reorganized Debtors anticipate that they will reduce expenses, where possible, to meet their obligations under the Plan.  In addition, the Debtors operate in a highly competitive industry. In order to stay competitive, the Reorganized Debtors will have to respond to changes in technology, services and standards that characterized the Reorganized Debtors' industry.  The Debtors believe that the continued efforts, abilities, and expertise of the Reorganized Debtors' officers will be essential to the ability to execute the Reorganized Debtors' business strategy.  Section 6.07 ("Certain Risk Factors") of the Disclosure Statement provides additional discussion of these and certain other risks.

5.07    Treatment of Disputed Claims.  Notwithstanding any other provisions of the Plan, Distributions with respect to any Claim which is disputed, unliquidated, or contingent will not be made until such Claim becomes an Allowed Claim.  Notwithstanding any provision in the Plan to the contrary, the Claim of any transferee of a transfer that is voidable under §§ 544, 547, 548 and 550 of the Bankruptcy Code will be deemed to be a Disputed Claim, and no Distribution will be made thereon, unless and until such transferee has paid the amount, or turned over any such property, for which such transferee is liable under § 550 of the Bankruptcy Code.

5.08   <u>Deadline to Dispute Claims</u>.  The Reorganized Debtors, with the Consent of the New Term Loan Agent, shall file, within ninety (90) days of the Effective Date, objections to claims.   Subject to the provisions of the Plan, upon entry of a Final Order resolving the objection, the Reorganized Debtors shall commence Distributions to the Claimant.

5.09   <u>Distributions to Holders of Allowed Claims</u>.  Distributions shall be mailed, via first class mail, to the Creditor's address listed on the proof of claim or such other address as provided by the Creditor before the Distribution is mailed.

5.10   <u>Unclaimed Distributions</u>.  All Distributions which remain uncashed for sixty (60) days shall be void and deemed forfeited.  The Reorganized Debtors shall not be liable for or obligated to pay any forfeited Distributions.

5.11   <u>Preservation of Causes of Action</u>.   In accordance with § 1123(b) of the Bankruptcy Code, and except where such Causes of Action have been expressly released, the Reorganized Debtors shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date and the Reorganized Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date.  The Reorganized Debtors may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtors.   Unless any Causes of Action are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Bankruptcy Court order, the Reorganized Debtors expressly reserve all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches, shall

apply to such Causes of Action upon, after, or as a consequence of Confirmation or the Effective Date.

The Reorganized Debtors intend to investigate potential claims against the Prepetition Agent and the Prior Senior Lenders ("Potential Claims").  The Potential Claims against the Prepetition Agent and Prior Senior Lenders may include, among other things, breach of contract, negligence, gross negligence, breach of the duty of good faith, breach of fiduciary duties, economic duress, shadow director and control liability claims, tortious interference and other potential claims, based on common law, any statutory provision or in equity arising out of the Prepetition Agent and Prior Senior Lenders' relationship with the Debtors and their principals.  The Reorganized Debtors will apply 100% of any net recoveries from such claims to pay down the New Term Loan; provided, that, (x) the Reorganized Debtors shall only be entitled to spend up to $200,000 in fees and expenses in connection with investigating or prosecuting Potential Claims, provided, that the Reorganized Debtors may pledge portions of the proceeds of Potential Claims to attorneys that agree to pursue the Potential Claims on a contingency basis; and (y) it being understood that the New Term Loan Agent and New Term Loan Lenders (including in their capacities as Senior Agent and the holders of Senior Secured Claims and Unsecured Mezzanine Loan Claims) shall be indemnified by the Reorganized Debtors and the New Holdcos for any claims that may arise from the prosecution of the Potential Claims under the credit agreement for the New Term Loan.

5.12    Disputed Claims Reserve.  The Debtors shall establish a reserve account with the Reorganized Debtors in an amount equal to the amount of the payments which would have been made to such Creditor had the Creditor's Disputed Claim been Allowed on the Effective Date and shall reserve said funds until such time as the Disputed Claim shall become an

Allowed Claim, upon which the Reorganized Debtors shall release the reserved funds to such Creditor or such other amount as ordered by the Court. Upon the entry of an order disallowing any Disputed Claim, the holder of such Claim shall immediately forfeit any claim, right, title, or interest in any distributions under this Plan and the Reorganized Debtors shall treat any reserved funds as Cash.

## ARTICLE VI

### Executory Contracts and Unexpired Leases

6.01    Assumption of Executory Contracts and Unexpired Leases and Proposed Cure. No later than twenty-one (21) days prior to the commencement of the hearing on confirmation of the Plan, the Debtors, with the Consent of the Senior Agent, shall file with the Bankruptcy Court a schedule (the "Assumed Executory Contracts and Unexpired Leases Schedule") identifying those Executory Contracts and Unexpired Leases to be assumed pursuant to the Plan, provided that the Debtors reserve the right to amend the Assumed Executory Contracts and Unexpired Leases Schedule at any time up to three (3) Business Days prior to the Confirmation Hearing to add or delete any Executory Contracts and Unexpired Leases contained therein. The Debtors shall provide notice of the Assumed Executory Contracts and Unexpired Leases Schedule, and any amendments thereto, to the non-Debtor parties to the Executory Contracts and Unexpired Leases. The Assumed Executory Contracts and Unexpired Leases Schedule shall include a designation of the monetary cure amount that Debtors believe is owed with respect to each Executory Contract and Unexpired Leases set forth. Except as provided elsewhere in this Plan, any non-Debtor party to an Executory Contract or Unexpired Lease shall file with the Bankruptcy Court and serve its objection to the Assumed Executory Contracts and Unexpired Leases Schedule and the proposed cure amount

therein, if any, in writing not later than 5:00 p.m. on the day that is seven (7) days prior to the confirmation hearing.  The failure of any non-Debtor party to an Executory Contract and Unexpired Lease to file and serve an objection to the assumption of such Executory Contract or Unexpired Lease by the deadline therefore shall be deemed as consent to the assumption and assumption and assignment of the Executory Contract and Unexpired Lease and to such cure amount.  On the Effective Date, in addition to all Executory Contracts and Unexpired Leases that have been previously assumed by the Debtors by order of this Court, each of the Executory Contracts and Unexpired Leases of the Debtors that are identified in the Assumed Executory Contracts and Unexpired Leases Schedule shall be deemed assumed and assigned in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of adequate assurance of the future performance of such assumed contract.

      6.02   <u>Cure of Defaults of Assumed Executory Contracts and Unexpired Leases.</u>  The cure amount owed under each Executory Contract and Unexpired Lease to be assumed and assigned pursuant to the Plan, as set forth in the Assumed Executory Contracts and Unexpired Leases Schedule, or as otherwise established by the Bankruptcy Court at the Confirmation Hearing, shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the cure amount with respect to the aggregate cure costs for the Executory Contracts and Unexpired Leases listed in the Assumed Executory Contracts and Unexpired Leases Schedule on the later of (a) the Effective Date (or as soon as practicable thereafter), (b) as due in the ordinary course of business, or (c) on such other terms as the parties to such Executory Contracts and Unexpired Leases may otherwise agree or as otherwise established by the Bankruptcy Court at the confirmation hearing.  In the event the Debtors or Reorganized

Debtors are unable to agree on a cure amount for any Executory Contract or Unexpired Lease, the Debtors or Reorganized Debtors, as applicable, reserve the right to amend the Assumed Executory Contracts and Unexpired Leases Schedule, and such Executory Contract or Unexpired Lease shall be deemed rejected.

  6.03 <u>Post-petition Contracts and Leases.</u> All contracts and leases entered into by the Debtors after the Petition Date and remaining in effect on the Effective Date shall be deemed assigned to the Reorganized Debtors as of the Effective Date.

## ARTICLE VII

<u>General Provisions</u>

  7.01 <u>Severability</u>.  Any clause within the Plan, enforcement of which is determined by a Court to be unconstitutional, illegal, unlawful, or otherwise improper or manifestly contrary to public policy, shall be severed and stricken from the Plan and shall not invalidate or otherwise render void the remainder of the Plan unless such severance would frustrate the accomplishment of the purposes of the Plan.

  7.02 <u>Modification of Plan</u>. Pursuant to § 1127(a) of the Bankruptcy Code, the Debtors, with the Consent of the Senior Agent, may modify the Plan at any time prior to the entry of the Confirmation Order.  After entry of the Confirmation Order, the Reorganized Debtors may, pursuant to § 1127(b) and (c) of the Bankruptcy Code and with approval of the Court and Consent of the Senior Agent or the New Term Loan Agent (as applicable), modify or amend the Plan in a manner which does not materially or adversely affect the interests of Persons affected by the Plan, without having to solicit acceptance of such modifications, and may take such steps as are necessary to carry out the purpose and effect of the Plan as modified.

7.03    Closing of the Chapter 11 Cases. After the Estate has been fully administered, the Bankruptcy Court shall close the Chapter 11 Cases in accordance with § 350 of the Bankruptcy Code.

7.04    Further Actions. Pursuant to § 1142(b), the Confirmation Order shall operate as a Final Order of the Court directing the Reorganized Debtors, and any other necessary parties to execute and deliver, or join in the execution and delivery, of any instrument required to effect a transfer of the Estate Property, and to perform any other act that is necessary for the consummation of this Plan.

7.05    Captions. Captions used in this Plan are for convenience only, and shall not affect the construction or interpretation of the Plan.

7.06    Jurisdiction of the Bankruptcy Court. After the entry of the Confirmation Order, the Court will retain jurisdiction for the following purposes:

(a)     To determine the classification and priority of all Claims against or Equity Interests in the Debtors and to re-examine any Claims or Equity Interests which may have been allowed;

(b)     To determine allowance of Claims for damages with respect to rejection of any such executory contracts or unexpired leases within such time as the Court may direct;

(c)     To hear and determine all applications for compensation and other Administrative Expenses;

(d)     To hear and determine all Avoidance Actions;

(e)     To conduct hearings on valuation, as necessary, and to determine whether any party-in-interest is entitled to recover any Claim against any Person, whether

arising under § 506(c) of the Bankruptcy Code, or arising out of a voidable preference, a fraudulent transfer, or otherwise;

(f)      To hear and determine any and all adversary proceedings or contested matters;

(g)      To determine any modification of the Plan after Confirmation pursuant to § 1127 of the Bankruptcy Code;

(h)      To determine all matters, controversies and disputes arising under or in connection with the Plan and its interpretation, enforcement, or consummation or otherwise related to the application, or disposition of the Estate Property, including any disputes relating to the new organizational documents governing the Reorganized Debtors or the New Holdcos and all ancillary and related documents relative to the Plan and these Chapter 11 Cases, including the Existing Equity Holders Undertaking;

(i)      To enter any order, including injunctions, necessary to establish and enforce the rights and powers of the Debtors under the confirmed Plan;

(j)      To ensure that the Reorganized Debtors comply with the provisions of the Plan and with all orders of the Court pursuant to the Plan;

(k)      To enable the Reorganized Debtors to take all actions contemplated by the Plan;

(l)      To adjudicate all claims or controversies arising out of any purchases, sales, or contracts made or undertaken by the Debtors during the pendency of this Chapter 11 where the outcome of that proceeding could conceivably have any effect on the Reorganized Debtors;

(m)     To enter a Final Decree pursuant to Rule 3022 of the Bankruptcy Rules; and

(n)     For all valid purposes as set forth under Title 11 and Title 28 of the United States Code.

7.07     <u>Request for Confirmation</u>.  To the extent deemed necessary, the Debtors hereby request the Court to enter the Confirmation Order confirming the Plan.

7.08     <u>Cram-Down</u>.  If any impaired Class under the Plan in accordance with §§ 1126 and 1129(a)(8) of the Bankruptcy Code fails to accept the Plan, the Debtors reserve the right to request the Bankruptcy Court to confirm the Plan pursuant to § 1129(b) of the Bankruptcy Code and to automatically cause such modification of the Plan so to enable the Plan to provide treatment of Claims to satisfy the requirements of § 1129(b) of the Bankruptcy Code.

7.09     <u>Disclosure Statement</u>.  The attention of holders of Claims and Interests is directed to the Disclosure Statement approved by the Court to satisfy the requirements of § 1129(b) of the Bankruptcy Code.

7.10     <u>Effect on Non-Debtors</u>.  Confirmation of the Plan shall not affect any Creditors' rights or remedies under third party guaranties or agreements with other Creditors.

7.11     <u>Conditions to Effective Date</u>.  The Plan shall not become effective and the Effective Date shall not occur unless and until the following conditions shall have been satisfied or waived in accordance with section 7.12 of this Plan:

(a) The Confirmation Order shall have been entered by the Bankruptcy Court and shall have become a Final Order.

(b) The New Term Loan Agreement and all related documents provided for therein or contemplated thereby shall be in form and substance acceptable to the Debtors and the Senior

Agent, and shall have been duly and validly executed and delivered, all conditions precedent to the effectiveness thereof and the issuance of the term loans thereunder (other than the occurrence of condition 7.11(a) of this Plan) shall have occurred or shall have been satisfied and the Reorganized Debtors will have access to funding under the New Term Loan as set forth under the Plan.

(c) All other actions, documents, and agreements determined by the Debtors and the Senior Agent to be necessary to implement the Plan, including the Existing Equity Holders Undertaking, shall have been effected or executed and shall be in form and substance acceptable to the Debtors and the Senior Agent.

(d) Each FCC Approval shall have been obtained.

(e) The final version of the Plan Supplement and all of the schedules, documents, and exhibits contained therein, and all other schedules, documents, supplements and exhibits to the Plan, shall be consistent with the Plan Term Sheet in all material respects, and shall have been filed in a manner consistent with the Plan Term Sheet.

(f) Organizational documents for the New Holdcos and the Reorganized Debtors and its subsidiaries, as necessary, shall be in form and substance acceptable to the Debtors and the Senior Agent and shall have been adopted and filed as necessary with the applicable authorities of the relevant jurisdiction(s) of formation and shall have become effective in accordance with the corporate or limited liability company laws of such jurisdiction(s).

(g) All authorizations, consents, certifications, approvals, rulings, no-action letters, opinions or other documents or actions required by any law, regulation or order to be received or to occur in order to implement the Plan on the Effective Date shall have been obtained or shall have occurred unless failure to do so will not have a material adverse effect on the

Reorganized Debtors and will not adversely affect the rights and remedies of the New Term Loan Lenders (in their capacities as New Term Loan Lenders and holders of New Equity) under the Plan Documents.

(h) The Debtors shall have sufficient Cash on hand on the Effective Date to make payments pursuant to the Plan such as to pay in full in Cash Administrative Expense Claims, Priority Tax Claims or other amounts required to be paid under the Plan on the Effective Date from existing Cash balances, revenue generated from the operations of the Debtors and the Reorganized Debtors and borrowings under the New Term Loan.

(i) The New Term Loan and the Equity Distribution shall have been issued.

(j) All assets shall have been vested in the Reorganized Debtors as contemplated under the Plan.

7.12    <u>Waiver of Conditions</u>.  Each of the conditions set forth in section 7.11 of the Plan, other than the condition set forth in subsections 7.11(a) and 7.11(d) of this Plan, may be waived in whole or in part by the Debtors with the Consent of the Senior Agent, without any notice to the Bankruptcy Court or parties-in-interest and without the need for a hearing.  For the avoidance of doubt, upon the consummation of the Plan on the basis of the waiver, in accordance with this section 7.12 of the Plan, of a condition set forth in section 7.11 of this Plan (other than the conditions set forth in subsection 7.11(a) and 7.11(d) of this Plan), the Plan shall be deemed substantially consummated for all purposes, including purposes of any "mootness" doctrine, including the doctrine of equitable mootness.

7.13 <u>Effect of Non-Occurrence of Conditions to Effective Date</u>.  If each of the conditions specified in section 7.11 of the Plan has not been satisfied or waived in the manner provided in section 7.12 of this Plan on or before the date that is sixty (60) days after the

Confirmation Date (subject to extension in the sole discretion of the Senior Agent), then: (i) the Confirmation Order shall be vacated and shall be of no further force or effect; (ii) no distributions under the Plan shall be made; (iii) the Debtors and all Holders of Claims and Interests in the Debtors shall be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred; and (iv) all of the Debtors' obligations with respect to the Claims and Interests shall remain unaffected by the Plan and nothing contained therein shall be deemed to constitute a waiver or release of any Claims by or against the Debtors or any other Person or to prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors and the Plan shall be deemed withdrawn. Upon such occurrence, the Debtors shall file a written notification with the Bankruptcy Court and serve it upon such parties as the Bankruptcy Court may direct. For the avoidance of doubt, (except as may be set forth in the Confirmation Order) the Plan shall have no force or effect until the occurrence of the Effective Date.

## ARTICLE VIII

### Effect of Confirmation

8.01    Terms Binding.   On the Effective Date, all provisions of the Plan, and all amendments, exhibits and schedules thereto, shall become binding on the Reorganized Debtors, the New Holdcos, the Estate, all Creditors, and all other Entities whose interests are affected in any way by the Plan.

8.02    Discharge.      Pursuant to the provisions of 11 U.S.C. §§ 105, 524, and 1141(d) and as except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the Confirmation Order shall

discharge and release, as of the Effective Date, the Debtors, their estates, and all of their respective property from any and all claims, debts, liens, security interests, encumbrances, and interests that arose before the Confirmation Date, including, but not limited to, all principal and any interest accrued and debts of the kind specified in 11 U.S.C. § 502(g), 502(h), and 502(i) whether or not (a) a proof of claim or interest based upon such Claim, debt, right, or Interest is filed or deemed filed under 11 U.S.C. § 501; (b) a Claim or Interest based upon such Claim, debt, right or Interest is allowed under 11 U.S.C. § 502, or (c) the holder of a Claim, debt, right, or Interest accepted this Plan.  In addition, subject to the provisions of this Plan and any contract, instrument, or other agreement or document created pursuant to the Plan, the Distributions made under this Plan and any contract, instrument, or other agreement or document created pursuant to the Plan shall be in exchange for and in complete satisfaction, discharge, and release of all claims against the Debtors and any of their respective assets or property, including claims for interest accruing after the Petition Date and prior to the Effective Date, whether known or unknown.  On or after the Effective Date, except as expressly provided in the Plan, all holders of Claims arising prior to the Confirmation Date shall, to the fullest extent possible under applicable law, be permanently barred and enjoined from asserting against the Debtors or their assets or property any further or other claims, including claims based on any act or omission, transactions, or other activity of any kind or nature that occurred prior to the Confirmation Date.

       8.03    Exculpation and Releases.

       (a) Exculpation.  To the fullest extent permitted by applicable law, and except as expressly provided in the Plan or Confirmation Order, from and after the Effective Date, the Released Parties shall neither have nor incur any liability to, or be subject to any right of action

by, any Debtor or Holder of a Claim or Interest, or any other party-in-interest, or any of their respective employees, representatives, financial advisors, attorneys, or agents acting in such capacity, or affiliates, or any of their successors or assigns, for any act or omission prior to the Effective Date in connection with, relating to, or arising out of, the Chapter 11 Cases, formulating, preparing, disseminating, negotiating, or filing, this Plan and the Disclosure Statement, the solicitation of acceptances of the Plan, the pursuit of approval of the Disclosure Statement and confirmation of the Plan, the confirmation of the Plan, the Plan Documents, the consummation of the Plan or the administration of the Plan or the property to be distributed under the Plan, or the restructuring transactions contemplated under the Plan and any actions taken or documents executed and delivered that are incidental thereto; *provided, however*, that the foregoing provision shall not apply to an act or omission that is subsequently determined by a Final Order of the Bankruptcy Court to have constituted willful misconduct or gross negligence; *provided, further*, however, that any act approved by Final Order of the Bankruptcy Court shall be deemed not to constitute willful misconduct or gross negligence. Any of the Released Parties shall be entitled to rely, in all respects, upon the advice of counsel with respect to their duties and responsibilities under the Plan.

(b) Releases by the Debtors.  To the fullest extent permitted by applicable law, as of the Effective Date, except as expressly provided in the Plan or the Confirmation Order, for good and valuable consideration, including the service of the Released Parties to facilitate the restructuring of the Debtors and the implementation of the restructuring contemplated by the Plan, the adequacy of which is hereby confirmed, the Debtors and the Reorganized Debtors, in their individual capacities and as debtors-in-possession on behalf of the Debtors' Estates, will be deemed to release and forever waive and discharge all claims, obligations, suits, judgments,

damages, demands, debts, rights, Causes of Action and liabilities whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Reorganized Debtors, the Released Parties, the Chapter 11 Cases, the Plan or this Disclosure Statement, or any document or agreement related thereto that the Debtors or the Reorganized Debtors had or have against the Released Parties (directly, indirectly, derivatively, in representative capacity or otherwise); *provided, however*, that the foregoing provision shall not apply to an act or omission that is determined by a Final Order of the Bankruptcy Court to have constituted willful misconduct or gross negligence.

(c) Releases by Holders of Claims and Interests.  To the fullest extent permitted by applicable law, as of the Effective Date, except as expressly provided in the Plan or the Confirmation Order, each Holder of a Claim or an Interest who votes to accept the Plan, or who, directly or indirectly, is entitled to receive a distribution under the Plan, including Persons entitled to receive a distribution via an attorney, agent, or trustee, or who is the Holder of an Unimpaired Claim shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged the Debtors, the Reorganized Debtors, and the Released Parties from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims, asserted on behalf of a Debtor, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that such Person would have been legally entitled to assert (whether individually or collectively), based on or relating to any act,

omission, transaction, event or other occurrence taking place on or prior to the Effective Date, *provided, however*, that the foregoing release shall not operate to waive or release any Causes of Action of any releasing party: (1) against a Released Party arising from the contractual obligations owed to the releasing party (other than pursuant to the Senior Credit Agreement and the Subordinated Credit Agreement); (2) expressly set forth in and preserved by the Plan, the Plan Supplement, Plan Documents or other related documents; or (3) arising from claims for fraud, gross negligence, willful misconduct, or criminal conduct.   Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post-Effective Date obligations of any party under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement and other Plan Documents) executed to implement the Plan.

(d) Injunction Related to Exculpation and Releases.  Pursuant to section 524(a) of the Bankruptcy Code, all Persons that have held, hold or may hold any liabilities released or discharged or exculpated pursuant to this section of the Plan will be permanently enjoined from taking any of the following actions against any Released Party or its property on account of such released liabilities: (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind; (ii) enforcing, levying, attaching, collecting or otherwise recovering by any manner or means, directly or indirectly, any judgment, award, decree or order; (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any Lien; (iv) except as provided in the Plan, asserting any setoff, right of subrogation or recoupment of any kind, directly or indirectly, against any obligation due a Released Party; and (v) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan.

8.04    <u>Release of Claims Against Retained Professionals</u>.  On the Effective Date, Retained Professionals are hereby released and shall neither have nor incur any liability, other than for gross negligence or willful misconduct, to the Debtors, the Estate, the Reorganized Debtors, or any creditor or interested party for any action taken or omitted to be taken in connection with or related to the Chapter 11 Cases, including, without limitation, the formulation, preparation, dissemination, implementation or confirmation of the Plan, the Disclosure Statement, or any contract, instrument, release, or other agreement or document including but not limited to any other action taken or omitted in connection with the Plan or the Disclosure Statement.

8.05    <u>Non-Release of Co-Makers and Guarantors.</u>  Nothing herein shall in any way alter affect, or release the liability of any co-makers or guarantors on any Claims other than the Debtors as provided in the Plan.

## ARTICLE IX

<u>Post-Confirmation Provisions</u>

9.01    <u>Post-Confirmation Powers and Duties of the Reorganized Debtors.</u>  After Confirmation, the Reorganized Debtors shall make all Distributions and perform all duties set forth in this Plan, shall take all other actions necessary to consummate and implement the Plan, and shall retain all authority necessary to perform such duties.

9.02    <u>Avoidance Actions</u>.  The Reorganized Debtors do not intend to pursue preferences, fraudulent transfers or other avoidance actions.  Based upon an analysis of the Statement of Financial Affairs, any preferential transfer actions and fraudulent transfer actions

against Debtors or any other Insiders, of which Debtors believe there to be none, shall be released upon entry of the Confirmation Order.

9.03 <u>Tax Returns</u>. The Debtors shall file all tax returns with respect to the Debtors, when due, including all tax returns necessary to close the Bankruptcy Estate.

9.04 <u>Existing Equity Holders Undertaking</u>. The Existing Equity Holders shall comply with all duties and obligations under the Existing Equity Holders Undertaking.

Respectfully submitted,

CARMODY MACDONALD P.C.

By: /s/ *Robert E. Eggmann*
    ROBERT E. EGGMANN #37374MO
    THOMAS H. RISKE #61838MO
    120 S. Central Avenue, Suite 1800
    St. Louis, Missouri  63105
    (314) 854-8600
    (314) 854-8660 – FAX
    ree@carmodymacdonald.com
    thr@carmodymacdonald.com

ATTORNEYS FOR DEBTORS